JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
B. Andrew Jones, OSB 091786
Senior Assistant County Attorney
Multnomah County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:  (503) 988-3377
E-mail: andy.jones@multco.us
    *Of Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| CYRUS ANDREW SULLIVAN,<br><br>    Plaintiff,<br><br>  v.<br><br>MULTNOMAH COUNTY, et al,<br><br>    Defendants. | No. 3:19-cv-00995-JGZ<br><br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW<br><br>FRCP 56<br><br>***ORAL ARGUMENT REQUESTED*** |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

I.    CERTIFICATION ............................................................................................... 1

II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ........................................ 1

III.  SUMMARY OF THE CASE ................................................................................. 1

IV.   POINTS AND AUTHORITIES ............................................................................. 2

V.    SUMMARY JUDGMENT STANDARD .................................................................. 10

VI.   SUMMARY OF PLAINTIFF'S CLAIMS ................................................................ 11

      A.    CLAIMS 1 – 4: FEDERAL CLAIMS ......................................................... 13

          1.    The Eighth Amendment is Applicable to All Federal Claims Since Plaintiff was Detained as a Sentenced Inmate. ...................................... 13

          2.    Claim 1:  Plaintiff Cannot Establish a *Monell* Theory Against Multnomah County for Constitutionally Excessive Force .......................................... 13

          3.    Claim 2: Plaintiff's Claims for Excessive Force are Governed by the Eight Amendment and Fail Against Multiple Defendants. .............................. 15

          4.    Claim 3: Plaintiff Cannot Show a *Monell* Theory for Inadquate Medical Care. ....................................................................................... 18

          5.    Claim 4: Defendants Provided Appropriate Medical Care and Have Qualified Immunity from a Deliberate Indifference Suit. ........................ 19

      B.    CLAIMS 5 – 7: Oregon Tort Claims ..................................................... 19

          1.    Claim 5: Multnomah County and its Officers are not Liable for Justified and Statutorily Protected Physical Contact. .......................................... 19

          2.    Claim 6: Multnomah County's Care Met the Applicable Standards of Care. ...................................................................................... 22

          3.    Claim 7: The Defamation Claim is Time Barred and All Purported Communications are Privileged Under Oregon Law. .............................. 23

VII.  CONCLUSION ................................................................................................. 24

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

# TABLE OF AUTHORITIES

## Cases

*Brown v. Ransweiler*, 171 Cal App 4th 516, 527, 89 Cal Rptr 3d 801 (2009) ............................. 20

*Canell v. Multnomah County*, 141 F.Supp 2d 1046, 1052 (D. Or 2001) ..................................... 13

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016)...................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ................................................................. 10

*Chamberlain v. City of Portland,* 184 Or App. 487, 56 P 3d 497 (2002).................................... 23

*Christianson v. State,* 239 Or App 451, 459, 244 P3d 904, 908 (2010) ..................................... 23

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197 (1989)............................... 14

*City of Escondito, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019)..................................................... 16

*City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986) ................................. 14

*City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct 2427 (1985) ...................................... 14

*City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). 14

*Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) .......................... 11

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) ............................. 18

*Connick v. Thompson*, 561 U.S. 51, 62, 131 S.Ct. 1350 (2011) ................................................. 14

*Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48–49, 293 P2d 717 (1956).................................... 20

*Cruz v. Multnomah County*, 279 Or. App 1, 19, 381 P.3d 856 (2016) ....................................... 22

*DeLong v. Yu Enterprises, Inc.,* 334 Or 166, 170, 47 P3d 8 (2002) ............................................ 23

*District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018)......................................................... 16

*Edson v. City of Anaheim*, 63 Cal App 4th 1269, 1273, 74 Cal Rptr 614 (1998) ......................... 21

*Farmer v. Brennan*, 511 U.S. 825, 845, 114 S.Ct. 1970 (1994) .................................................. 15

*Furnace v. Sullivan*, 705 F3d 1021, 1028 (9th Cir. 2013) ......................................................... 15

*Getchell v. Mansfield*, 260 Or. 174, 179, 489 P.2d 953 (1971) .................................................. 22

*Gigler v. City of Klamath Falls*, 21 Or. App. 753, 764, 537 P2d 121 (1975)............................. 22

*Gilette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992) ............................................... 13

*Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018) .......................................... 19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982) .............................................. 16

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th 2019) .............................. 16, 19

*Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995 (1992)....................................................... 15

*Jett v. Dallas Independent. School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) ................................................................................................................................. 13

*Johnson v. Brown*, 193 Or. App. 375, 381, 91 P.3d 741, 744, decision clarified on reconsideration, 194 Or. App. 486, 95 P.3d 235 (2004) ......................................................... 23

*Jordan v. Gardner*, 986 F2d 1521, 1528 (9th Cir. 1993)......................................................... 16

*Joshi v. Providence Health Systems of Oregon Corp.*, 342 Or. 152, 156-157, 149 P.3d 1164 (2006) .................................................................................................................................... 22

*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985).................... 12

*Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)...................................................................... 17

*Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).......................................................................... 16

*Lukens v. City of Portland*, 11-CV-00827-MO, 2011 WL 5999376 (D. Or 2011) ..................... 11

*Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir 2003) ................................................................. 18

*Martinez v. County of Los Angeles*, 47 Cal App 4th 334, 343, 54 Cal Rptr 2d 772 (1996) .......... 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ................... 11

ii – TABLE OF AUTHORITIES

*Moore v. Kaiser Permanente*, 91 Or. App. 262, 265, 754 P.2d 615 (1988) ................................. 23

*Munoz v. City of Union City*, 120 Cal App 4th 1077, 1102, 16 Cal Rptr 3d 521 (2004)............... 20

*Nickerson v. Portland Police Bureau*, 08–217–KI, 2008 WL 4449874, at *1 (D.Or. Sept.30, 2008)................................................................................................................................. 11

*Norwood v. Vance*, 591 F3d 1062, 1067 (9th Cir. 2010)..................................................... 15

*Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009)...................................... 16

*Pembauer v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) ................................................................................................................... 13

*Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) ................................................ 19

*Piedra v. Dugan*, 123 Cal App 4th 1483, 1495, 21 Cal Rptr 3d 36 (2004) ................................. 20

*Radiation Therapy Consultants, PC*, 299 Or. 238, 246, 701 P.2d 440 (1985) ........................... 22

*Redman v. County of San Diego,* 942 F.2d 1425, 1446-1447 (9th Cir. 1991)............................ 12

*Rich v. Cooper*, 234 Or. 300, 309-310, 380 P.2d 613 (1963) ............................................. 20

*Rogers v. Meridian Park Hosp.*, 307 Or 612, 619, 772 P2d 929 (1989) ............................... 22

*Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001) ........................................... 16

*Thornhill Pub. Co., Inc. v. General Tel. & Electronics.*, 594 F.2d 730, 738 (9th Cir 1979)......... 11

*U.S. v. $31,697.59 Cash*, 665 F.2d 903, 904 (9th Cir 1982).............................................. 11

*Wallulis v. Dymowski*, 323 Or 337, 349, 918 P2d 755 (1996)............................................ 23

*Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986) ........................................ 15

## Statutes

ORS 12.120(2) ...................................................................................................... 23

ORS 161.205(2) ..................................................................................................... 21

ORS 30.265 ........................................................................................................... 21

ORS 30.265(6)(f) ................................................................................................... 21

ORS 30.275(9) ...................................................................................................... 23

ORS 161.209.......................................................................................................... 21

ORS 161.235.......................................................................................................... 22

ORS 677.095(1) ..................................................................................................... 22

## Other Authorities

18 U.S.C. §111(a)(1)............................................................................................... 10

42 U.S.C. §1983..................................................................................................... 2, 11, 12

## Rules

Fed. R. Civ. P 56.................................................................................................... 1, 10

Fed. R. Civ. P. 56(a) ............................................................................................... 10

Fed. R. Civ. P. 56(c) ............................................................................................... 18

Fed. R. Civ. P. 56(e) ............................................................................................... 11

Local Rule 7-1......................................................................................................... 1

iii – TABLE OF AUTHORITIES

## I.    CERTIFICATION

Pursuant to Local Rule 7-1, Defendants certify that they have made a good faith effort to resolve the disputes raised in this motion and are unable to do so and the Court's ruling is now necessary.  The parties have discussed summary judgment on multiple occasions telephonically and the parties discussed dispositive motions with the Court during the December, 2019 status conference.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants move for summary judgment on the grounds that there is no genuine issue of material fact.  In support of this motion, Defendants rely on the pleadings on file with this court, the Declaration of Brandon Pedro, the Declaration of Timothy Barker, the Declaration of Matthew Ingram, the Declaration of Uwe Pemberton, the Declaration of Paul Simpson, the Declaration of Michael Seale, filings from *United States v. Cyrus Sullivan*, District of Oregon Case No. 3:17-CR-00306-JGZ, and the following Points and Authorities.

## III.    SUMMARY OF THE CASE

On June 28, 2017, Plaintiff Cyrus Sullivan physically assaulted Multnomah County Sheriff's Deputy Tim Barker and several colleagues at the Multnomah County Detention Center.  Plaintiff was being held on a violation of his sentence in *United States v. Sullivan*, District of Oregon Case No 3:14-CR-00190-JGZ.  Plaintiff pled guilty to assaulting Deputy Barker, *United States v. Cyrus Sullivan*, District of Oregon Case No 3:17-CR-00306-JGZ.   During his struggle with multiple deputies, Plaintiff sustained a fracture to his left arm.  Plaintiff alleges deputies broke his arm later, as they uncuffed him in his new cell.

Page 1 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW

Multnomah County Corrections Health staff provided Plaintiff medical care for this injury, including transport to outside medical providers, for treatment and management of Plaintiff's broken arm.  Plaintiff left County custody in September, 2017.

Plaintiff brings this suit against Multnomah County, Sheriff Mike Reese, ten (10) current and former Multnomah County deputy sheriffs, the Corrections Health medical director, and three (3) County Corrections Health practitioners.  Plaintiff contends Defendants violated his civil rights protected under 42 U.S.C. §1983 and that Multnomah County is liable under Oregon law.  Plaintiff is wrong.

On the federal claims, there are no facts demonstrating a constitutional deprivation or a *Monell* claim, and the doctrine of qualified immunity bars suit against individual defendants.  As to the state claims, the deputies used force justified under Oregon law, Multnomah County provided care that met community standards, the defamation claims are untimely and Defendants are immune.

## IV.    POINTS AND AUTHORITIES

Multnomah County owns and operates the Multnomah County Detention Center ("MCDC"), a maximum security jail facility.  (Declaration of Brandon Pedro, ¶4).  MCDC houses unsentenced inmates detained pending trial, as well as inmates serving a sentence or for violation of probation or post-prison supervision.  (*Id.*).  The population includes federal inmates, sentenced and unsentenced, pursuant to a contract with the United States Marshal's service. (*Id.*).  The Multnomah County Sheriff's Office administers day-to-day operations of MCDC, and the Multnomah County Health Department – Corrections Division sees to medical needs. (*Id.*).

Page 2 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW

Plaintiff arrived at MCDC on February 24, 2017 on a United States' Marshal's Hold associated with a probation or supervised release violation. (Pedro Declaration, ¶5, Exhibits 1, and 2; *United States v. Cyrus Andrew Sullivan*, United States District Court – District of Oregon Case Number 3:14-cr-00190-JGZ-1). (See Docket 32 – 41).[1] MCSO housed Plaintiff on the 5th floor of MCDC, Module D, a two-tiered dormitory with cells ringing an open common area. (*Id.* at ¶7, Exhibits 3 and 4). This module is for inmates classified as "close" custody, meaning a higher level of supervision. (*Id.* at ¶7). Plaintiff had a "close" classification based in part on his prior disciplinary history, including rule violations in March and April, 2017. (*Id.* at ¶6).

On June 28, 2017, another inmate gave Plaintiff a cup of Gatorade during medical rounds. (Declaration of Uwe Pemberton, ¶¶3, 4). Deputy Uwe Pemberton and medical technician Erica Barker both told Plaintiff to give the Gatorade back to Ms. Barker, as Plaintiff was not receiving Gatorade as part of his care plan. (Pemberton Declaration, ¶¶3, 4). Plaintiff did not follow these orders. (*Id.*).

The Multnomah County Sheriff's Office Inmate Manual, available to all inmates, classifies failing to do as ordered as a major violation subject to discipline. (Pedro Declaration, ¶8, Exhibit 5). An inmate charged with a major rule violation can be moved out of their dorm to the disciplinary housing unit on the 4th floor pending a hearing. (*Id.*, ¶8, Exhibit 5, p. 9).

This rule takes particular importance in a maximum security facility; refusing directions creates an unpredictable environment with potential hazards to staff and inmates alike. (Pemberton Declaration, ¶¶5, 6). Plaintiff notes in his Amended Complaint that he has a history of friction with staff at MCDC, and prior assaults on staff at other facilities. (Docket 38, pp. 5-

---

[1] The Warrant and Return do not appear to be available to the public on PACER.

Page 3 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW

7).  Deputy Pemberton decided to move Plaintiff to the disciplinary housing unit for this rule violation, and directed Plaintiff to step into the dorm's sally port for transport.  (Pemberton Declaration, ¶¶5, 6).

Plaintiff refused, running to the top tier and shouting down to Ms. Barker that he would put her name on the internet and "put a hit out on" Barker, escalating to threats against staff, another major rule violation.  (Pemberton Declaration, ¶7; Pedro Declaration, ¶8, Exhibit 5).  Deputy Pemberton radioed for assistance, hopeful the presence of multiple deputies would convince Plaintiff to comply with orders.  (Pemberton Declaration, ¶7).  Deputy Pemberton also gave another verbal direction for Plaintiff to come down and move into the sally port, which Plaintiff refused and ran into his cell and shut the door.  (*Id.*).

Sergeant Matthew Ingram, acting Sergeant Tim Barker,[2] and Deputies Paul Simpson, Matt Dilger, Phillip Hubert, and Wendy Muth responded.  (Pemberton Declaration, ¶9).  Deputies Simpson and Hubert arrived first, telling Plaintiff to gather his belongings and come to the door to be handcuffed through the food port.  (Declaration of Paul Simpson, ¶¶3-5).  Handcuffing through the food port of a closed cell door is a common technique, particularly when inmates have been non-compliant or threatening, as it keeps the inmate separate from deputies until the inmate's hands are secure.  (*Id.*).

Plaintiff told Deputy Simpson "Fuck you, come in and get me," and that Plaintiff would find Deputy Simpson's home address and publish it on Plaintiff's website.  (Simpson Declaration, ¶5).  Despite Plaintiff's goading, the deputies waited for more assistance to arrive.

---

[2] Defendant Barker holds the rank of deputy but serves as acting sergeant on an as needed basis. (Barker Declaration, ¶3).  This motion refers to him throughout as "Sergeant Barker" since he was serving in that capacity on June 28, 2017.

Page 4 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

(*Id.*).  Sergeant Matthew Ingram arrived next, trying to establish rapport and give Plaintiff options for moving voluntarily, but Plaintiff continued to decline.  (Ingram Declaration, ¶¶4, 5).  Plaintiff was not a threat to anyone's safety while secured inside the cell, and appeared calm in demeanor when speaking to Sergeant Ingram.  (*Id.*).

Sergeant Barker arrived next and attempt to persuade Plaintiff to move, telling Plaintiff something to the effect of "we have never had any issues before, c'mon, handcuff up so that we can move you" (*Id.* ¶6, Declaration of Tim Barker, ¶¶3-4).  Plaintiff told Sergeant Barker that Plaintiff would not allow them to handcuff him through the closed door.  (Ingram Declaration, ¶¶6-7, Barker Declaration, ¶4).

Opening the cell door, as opposed to using the food port, gives Plaintiff unrestrained access to the deputies.   (Ingram Declaration, ¶7).   While Plaintiff was calm during this interactions, inmate behavior can change rapidly from calm to violent, from passive to resistant, particularly where someone has been non-compliant and threatening only minutes before.  (*Id.,* ¶6, Barker Declaration, ¶6).  While Plaintiff's assent and relatively calm demeanor were encouraging, Plaintiff's plan presented risks that would not exist had Plaintiff agreed to be handcuffed through the port.  (Barker Declaration, ¶¶4-6).

Sergeant Barker tried to minimize these risks, telling Plaintiff to turn away from the door and place his hands behind his back to show compliance and put deputies out of Plaintiff's direct line of sight.  (Barker Declaration, ¶7; Ingram Declaration, ¶8).  Sergeants Barker and Ingram also made sure Deputy Simpson had a Taser at the ready in the event Plaintiff resisted and got out of the cell unrestrained and assaultive.  (Barker Declaration, ¶¶7, 8; Ingram Declaration, ¶7-8: Simpson Declaration, ¶6).  Barker announced to Plaintiff that deputies would be coming in to handcuff him, and Plaintiff responded with a nod.  (Barker Declaration, ¶5).

Page 5 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW

After the checks, Deputy Pemberton opened Plaintiff's cell door remotely from the officer station. (*Id.*, Pemberton Declaration, ¶10). Sergeant Ingram moved into the cell first, just a step ahead of Sergeant Barker, with Deputies Muth, Hubert, and Simpson standing behind outside the cell. (Barker Declaration, ¶¶7-9; Simpson Declaration, ¶6; Ingram Declaration, ¶8).

As soon as Sergeant Ingram stepped into the cell, Plaintiff turned and threw a red, powdered substance into Sergeant Ingram's face. (Ingram Declaration, ¶9; Barker Declaration, ¶9; Simpson Declaration, ¶7; Pemberton Declaration, ¶10). Plaintiff threw the powder with enough force to fly past Ingram, hitting Sergeant Barker's face and Deputy Simpson's chest and flying out of the cell, visible to Deputy Pemberton standing on the floor below the cell tier. (Ingram Declaration, ¶9; Barker Declaration, ¶9; Simpson Declaration, ¶7; Pemberton Declaration, ¶10). After throwing the red powder, Plaintiff threw a punch at Sergeant Ingram's face. (Ingram Declaration, ¶9).

The risk of injury to the deputies' eyes from the powder and from the punch are clear. (Ingram Declaration, ¶9; Barker Declaration, ¶¶9-10). Plaintiff was resistive, uncontrolled, threatening, and had the opportunity to harm the deputies nearby. (*Id.*). Deputies and sergeants also carry items - Tasers, pepper spray canisters, a heavy radio module, keys - that create a substantial danger to staff and inmates in the hands of a resistive, fighting inmate. (Ingram Declaration, ¶10). It was vitally important for staff to get Plaintiff under control to stop these threats. (*Id.*).

Sergeant Ingram blocked Plaintiff's punch and spun him, grabbing for Plaintiff's right arm while Sergeant Barker grabbed for Plaintiff's left arm, both men pushing Plaintiff against the low counter to the right side of the cell. (Ingram Declaration, ¶11; Barker Declaration, ¶11). Plaintiff struggled violently, kicking back at Sergeant Ingram and pulling both of his arms away,

Page 6 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

ignoring repeated directions to stop resisting.  (Barker Declaration, ¶11; Ingram Declaration, ¶11).  Deputies Simpson, Muth, and Hubert moved to grab Plaintiff's legs, while Plaintiff continued to resist, pulling Sergeant Ingram's right arm down underneath Plaintiff's body and pinning it against the counter.  (Ingram Declaration, ¶11; Simpson Declaration, ¶¶7-8; Barker Declaration, ¶¶11-12).

Sergeant Ingram was able to free his right arm and to pull Plaintiff's right arm out, ordering Plaintiff to put his arm behind his back against Plaintiff's resistance.  (Ingram Declaration, ¶12).  Sergeant Ingram was ultimately able to pull Plaintiff's right arm behind him to the small of Plaintiffs' back and handcuff his right wrist.  (Ingram Declaration, ¶12).

Sergeant Barker met strong resistance as well, with Plaintiff first striking back at Sergeant Barker with his left elbow and, once Sergeant Barker got a firm grasp on Plaintiff's left arm, Plaintiff continuously strained against Sergeant Barker's attempt to pull Plaintiff's arm back for cuffing.  (Barker Declaration ¶12; Ingram Declaration, ¶13).  During this struggle, Sergeant Barker and Sergeant Ingram heard a popping sound as Sergeant Barker was trying to overcome pull Plaintiff's left arm back against Plaintiff's violent resistant, though neither initially perceived Plaintiff reacting as if he had been injured.  (*Id.*, Ingram Declaration, ¶14).  However, after hearing the popping sound, Sergeant Barker was immediately able to pull Plaintiff's arm behind his back and secure it.  (Barker Declaration, ¶12, Ingram Declaration, ¶14).

After securing the handcuffs, Sergeants Ingram and Barker escorted Plaintiff to the fourth floor, while Plaintiff went dead weight, forcing the sergeants to hold him up under his armpits and give directions to walk under his own power. (Barker Declaration, ¶13; Ingram Declaration, ¶¶15-16; Pemberton Declaration, ¶¶11-12; Simpson Declaration, ¶¶8-9)).  Once the three

Page 7 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
     OF LAW

reached Plaintiff's assigned cell, Sergeants Barker and Ingram walked Plaintiff into the cell, and lowered him, face down onto the mattress in the middle of his cell.  (Ingram Declaration, ¶17).

All inmates on level three disciplinary status or higher are subject to a strip search before celling into their new dormitory cell, as inmates of this status generally have exhibited behavior suggesting a heightened threat to safety of staff or other inmates, and staff use the visual-only search to ensure the inmate has not secreted contraband to the new cell.  (Ingram Declaration, ¶18).  Level 3 and above inmates also wear a white jumpsuit as their jail-issued clothing which is different than the clothing Plaintiff was wearing.  (*Id.*).

Sergeant Ingram was understandably concerned taking handcuffs off and leaving Plaintiff's arms unsecured during this visual strip search and dressing in would create a safety risk.  (*Id.* ¶19).  Sergeant Ingram decided to cut Plaintiff's clothing off his body, visually strip search him while Plaintiff remained handcuffed, and remove the handcuffs at the last moment before the sergeants left the cell for Plaintiff to dress in.  (*Id.*).

While waiting for the clothes cutters and a white jumpsuit, Plaintiff said that he could not breathe.  (*Id.* at ¶20).  Sergeant Ingram rolled Plaintiff slightly to his right side to check on him.  (*Id.*).  Plaintiff appeared to be inhaling and exhaling without effort, raising his voice at the deputies.  (*Id.*).  Staff told Plaintiff their plan, and were able to cut the clothing without incident.  (*Id.*).  After giving the visual strip search to ensure Plaintiff did not have any contraband anywhere under his clothing, staff told Plaintiff they would be removing Plaintiff's handcuffs.  (*Id.*).  Plaintiff told deputies he understood, and Sergeant Barker stepped in to remove the handcuffs.  (*Id.*).

Sergeant Barker removed the right cuff first, telling Plaintiff to put his right hand under Plaintiff's body while Sergeant Barker uncuffed Plaintiff's left wrist.  (Barker Declaration, ¶15).

Page 8 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW

After Plaintiff did not move his right arm, Sergeant Barker rolled Plaintiff a few inches to the left physically placing Plaintiff's right arm underneath Plaintiff's body, and rolled Plaintiff back onto his belly. (Barker Declaration, ¶15). Sergeant Barker then removed Plaintiff's left cuff and told Plaintiff to place his left arm under his body, and Plaintiff said that he could not move his left arm, and that Plaintiff believed his left arm was broken. (*Id.* at ¶16, Ingram Declaration, ¶21).

After Plaintiff said he thought his arm was broken, deputies immediately called for medical help, helped him to a seated position, and covered him with a jumpsuit and a sheet to keep him warm while waiting for medical staff to arrive. (*Id.*, Ingram Declaration, ¶21). Jail medical staff checked Plaintiff, and Sergeant Ingram arranged for an ambulance when medical personnel determined Plaintiff needed hospital attention. (*Id.*). Plaintiff went to Oregon Health Sciences University for initial evaluation and treatment and received follow up care from Multnomah County Corrections Health. (Pedro Declaration, ¶9, Declaration of Michael Seale, ¶6).

OHSU diagnosed Plaintiff with a fractured left humerus. (Seale Declaration, ¶7). He returned to County custody with a sling/swath as a medically adaptive device, along with a plan of care including Norco for pain, icing as needed, and follow-ups with orthopedic consults as needed. (*Id.*). Records indicate that Plaintiff requested or discussed a Sarmiento brace for his arm, which is a hard plastic brace that serves a similar function as does a sling or swath. (*Id.*). Hard braces are not approved medical adaptive devices in County jail facilities, but a sling and swath is an appropriate alternative for immobilizing a humeral fracture like Plainitff's. (*Id.*).

Plaintiff saw doctors at MCDC on July 12, 2017 and had follow up with OHSU orthopedics on August 3, 2017, with his fracture healing appropriately at that time, allowing Plaintiff to continue his rehabilitation with physical therapy. (*Id.* at ¶8). Plaintiff did complain

Page 9 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

of ongoing pain with the arm, and County medical staff prescribed and provided Norco and ibuprofen for pain management, standard practice for a patient recovering from this type of fracture.  (*Id.*).

Dr. Michael Seale, the medical director for Multnomah County Heath – Corrections Division, is a practicing physician with thirty plus years' experience.  (*Id.* at ¶¶2-6).  Dr. Seale reviewed Plaintiff's records and confirmed that all care that Multnomah County Health provided to Plaintiff met the degree of care, skill, and diligence used by ordinarily careful physicians practicing in the same or similar circumstances in the community.  (*Id.* at ¶9).

A federal grand jury returned a five count indictment associated with the June 28, 2017 incident, and the United States filed a superseding information charging Plaintiff with one count of assaulting Sergeant Barker, identified as "T.B.", a Multnomah County Sheriff's Officer assisting the United States Marshal, contrary to 18 U.S.C. §111(a)(1).  (*United States v. Cyrus Sullivan*, District of Oregon Case No 3:17-CR-00306-JGZ, *Id.*, Docket 1, 118).  Plaintiff submitted a petition to enter a guilty plea affirmatively representing that "On June 28th, 2017, I assaulted a federal officer, and in so doing made physical contact with that officer."  (*Id.*, Docket 122). The Court accepted the plea, entered judgment, and imposed sentence on the count charged in the information.  (*Id.*, Docket 128).

## V.    SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) provides Defendants, as the moving party, are entitled to summary judgment if they show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Defendants bear the initial burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Page 10 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW

The court must view record evidence in the light most favorable to Plaintiff and give him all reasonable inferences in his favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). However, all evidence must be admissible for consideration on the summary judgment record – conclusory, speculative, and unsupported statements of fact are insufficient. Fed. R. Civ. P. 56(e); *Thornhill Pub. Co., Inc. v. General Tel. & Electronics.*, 594 F.2d 730, 738 (9th Cir 1979). A non-moveant may not rely on evidence that contradicts issues already conclusively determined in a prior proceeding, including a plea of guilty in a criminal case. *U.S. v. $31,697.59 Cash*, 665 F.2d 903, 904 (9th Cir 1982).

Where the record of admissible evidence "taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI.    SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff named the County and fifteen (15) individual County actors as Defendants with a mixture of federal and state claims. The claims are:

(1)    42 U.S.C. §1983 *Monell* claim against Multnomah County[3] and Michael Reese in his official capacity – "Excessive Force" and "Deliberate Indifference";

(2)    42 U.S.C. §1983 "Excessive Force" claim against Deputies Timothy Barker, Matthew Ingram, Phillip Hubert, Paul Simpson,

---

[3] Plaintiff directs multiple allegations at Multnomah County and the Multnomah County Sheriff's Office as separate entities. The District of Oregon has repeatedly held that a law enforcement agency is not a "person" under *Monell*, making Multnomah County the sole appropriate defendant for that claim. See *Lukens v. Portland Police Bureau*, 11-CV-00827-MO, 2011 WL 5999376 (D. Or 2011)(Court dismisses claim against Portland Police Bureau as improper – claim is proper against City of Portland only under *Monell*), citing *Nickerson v. Portland Police Bureau*, 08–217–KI, 2008 WL 4449874, at *1 (D.Or. 2008)

Page 11 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW

David Kovachevich, Timothy Moore, Gary Glaze, and Kurtiss Morrison;[4]

(3)    42 U.S.C. §1983 *Monell* claim against Multnomah County and Michael Reese – "Deliberate Indifference to Serious Medical Needs;"[5]

(4)    42 U.S.C. §1983 "Deliberate Indifference To Serious Medical Needs" claim against Brooke Holter, Michael Seale, Angelina Platas[6];

(5)    State Assault and Battery against Multnomah County and the same individuals identified in Claim #2;[7]

(6)    State Medical Negligence against Multnomah County and the same individuals identified in Claim #4;[8]

(7)    State Defamation against Multnomah County and Michael Reese, Timothy Barker, Matthew Ingram, Wendy Muth, Philip Hubert, Paul Simpson, Uwe Pemberton, Timothy Moore, Gary Glaze, Kurtiss Morrison, David Kovachevich, Erika Barker, and Brook Holter.

---

[4] Plaintiff contends he is naming "all defendants" in "their individual and official capacities." (Docket 2, p. 2).  While Sheriff Reese is subject to suit in his official capacity as a *de facto Monell* defendant.  See *e.g. Kentucky v. Graham,* , 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") – an individual suit against Sheriff Reese requires personal involvement.  Since there are no allegations against Sheriff Reese being personally involved in any action(s) in the Complaint, the only claim against him would be in his official capacity. *Redman v. County of San Diego,* 942 F.2d 1435, 1446-1447 (9th Cir. 1991).

[5] Again, the Amended Complaint names "MCSO" and "MCHD" as putative Defendants in this claim, which are subject to dismissal for the reasons stated in footnote 3, *supra*.

[6] Plaintiff's Amended Complaint did appear to remove some allegations of ongoing harm based on his ongoing treatment provider's records.

[7] Multnomah County is properly the defendant and indemnitor for these claims under the Oregon Tort Claims Act, ORS 30.260 *et seq.*, though plaintiffs may elect to name individual defendants if the damages prayer exceeds the applicable cap.  The claim is however, for all intents and purposes, one against Multnomah County alone.
[8] See footnote 6.

Page 12 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

### A.     CLAIMS 1 – 4: FEDERAL CLAIMS

#### 1.     The Eighth Amendment is Applicable to All Federal Claims Since Plaintiff was Detained as a Sentenced Inmate.

Plaintiff contends "since I had yet to be sentenced the Fourteenth Amendment applies" to his federal claims. (Docket 2, p. 17).  Plaintiff was in custody as part of his sentence in *United States v. Sullivan*, District of Oregon Case No 3:14-CR-00190-JGZ, specifically for violation of the terms of his supervised release.

An inmate held pursuant to a judicially imposed sentence, including for violation of the terms of parole or post-prison supervision, is protected under the Cruel and Unusual Punishment clause of the Eighth Amendment, not the Fourth or Fourteenth Amendment.  See *Canell v. Multnomah County*, 141 F.Supp 2d 1046, 1052 (D. Or 2001).(Eighth Amendment applies to claims by plaintiff detained in local jail on the basis of parole or revocation of parole).  As such, this Court's analysis is under Eighth Amendment jurisprudence for the federal claims of punitive force and deliberately indifferent medical care.

#### 2.     Claim 1:  Plaintiff Cannot Establish a *Monell* Theory Against Multnomah County for Constitutionally Excessive Force

A *Monell* theory requires facts showing one of three scenarios: (A) act/omissions taken pursuant to formal government policy or "longstanding practice or custom constituting standard operating procedure of the municipality," (B) the individual who committed deprivation was an official policy-making defendant, or (C) an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and bases for it.  *Gilette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992), *Jett v. Dallas Independent. School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989), *Pembauer v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), *City of St. Louis v. Praprotnik,* 485 U.S.

Page 13 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

112, 127, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Plaintiff's claim the County failed to "properly train or supervise deputies and nurturing a deviant culture" (Docket 2, p. 32) is a "custom or practice" claim, as Plaintiff believes "It is hard to find any criticism" of the County's use of force policies. (Docket 2, p. 33).

It is impermissible in almost all circumstances to infer that a failure to train or discipline was the moving force behind a given action. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct 2427 (1985). The temptation to incorrectly apply a *respondeat superior* analysis is greatest, and therefore a *Monell* claim at its most tenuous, where the allegations are rooted in a 'failure to train.' *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350 (2011). Inaction alone is insufficient - there must be evidence that the municipality was on notice that a particular deficiency in its training program will almost certainly cause violations; that is the municipality's inaction in the face of this prior notice 'it is a functional equivalent' of a policy to violate the constitution. *Id.*, citing concurrence in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197 (1989).

There is no evidence to support this theory. Prior unsubstantiated allegations of excessive force does not create a *Monell* theory. Plaintiff's disagreement with conclusions in incident review does not establish *Monell* liability. Unrelated prior lawsuits do not demonstrate sufficient particularity or similarity to establish a custom. Finally, the absence of an underlying constitutional violation makes a *Monell* claim impossible. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that [municipal policy] might have *authorized* the use of constitutionally excessive force is quite beside the point.").

Page 14 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW

There is insufficient evidence from which a trier of fact could find the *Monell* claim Plaintiff alleges.  Summary judgment is warranted on Claim 1.

### 3.    Claim 2: Plaintiff's Claims for Excessive Force are Governed by the Eight Amendment and Fail Against Multiple Defendants.

The Eighth Amendment protects against "only the 'unnecessary and wanton infliction of pain'...[t]the infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense " *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986).  The question focuses on a corrections officer's intent, namely "whether force was applied in a good-faith effort to maintain or restore discipline, or [applied] maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995 (1992).  Factors to consider include the extent of injury suffered, the need for force, the relationship between the need for force and amount of force, the threat(s) reasonably perceived by the defendants, and effort(s) to temper the severity of forceful response including prior warnings or directions. *Furnace v. Sullivan*, 705 F3d 1021, 1028 (9th Cir. 2013).

The context of a jail facility is critical, as courts recognize the dangerous environment of a jail and the officers' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Norwood v. Vance*, 591 F3d 1062, 1067 (9th Cir. 2010), citing *Farmer v. Brennan*, 511 U.S. 825, 845, 114 S.Ct. 1970 (1994).  Courts and juries recognize this difficulty by requiring a heightened showing by a plaintiff, who must demonstrate an officer's malicious and sadistic state of mind/intention in cases where officer(s) use force during "an individual confrontation between an officer and a prisoner where 'officers must act immediately and

Page 15 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

emphatically to defuse a potentially explosive situation.'" *Jordan v. Gardner*, 986 F2d 1521, 1528 (9th Cir. 1993).

The doctrine of qualified immunity also applies to shield individual government actors from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity requires a court ask whether the conduct violated a constitutional right and, if so, whether it would have been clear to a government actor that the conduct in question was clearly unconstitutional." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). The court has discretion on which of the questions to address first. *Pearson v. Callaghan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).

To be "clearly established," existing law must place the constitutionality of the officer's conduct beyond debate under the totality of the circumstances. *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018). Changes in the law after an incident have no bearing on this question. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th 2019).

The contours of the rule also must be specific. As an example, a general "right to be free of excessive force" does not itself put reasonable officers on notice that what they are doing in a particular specific set of circumstances violates the right. See *City of Escondito, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019)("This Court has repeatedly told courts…not to define clearly established law at a high level of generality….[t]hat is particularly important in excessive force cases, as we have explained[.]")(citing *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018)).

Under either prong, qualified immunity is appropriate. Force was unquestionably made necessary after Plaintiff lured staff into his cell for a clearly premeditated assault on Sergeant Barker (and others), and continued to be necessary as Plaintiff kicked and punched and pulled

Page 16 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

away from staff trying to control his arms, creating a direct and immediate threat to staff and a high risk to the security of the entire dorm of a maximum security jail.

Deputies were able to use less force after securing handcuffs, though escort holds remained necessary as Plaintiff disregarded direction to walk under his own power and continued to pull away and go dead weight to resist the escort to the fourth floor. Finally, Sergeant Barker physically moved Plaintiff from side to side to remove his handcuffs in the context of all of Plaintiff's prior behavior, and kept Plaintiff on his stomach as he removed the handcuffs to minimize the risk of another assault, again while Plaintiff refused to comply with directions. The sum and substance of these events is constitutionally appropriate force, taken in the face of an immediate threat to safety and security of a maximum security jail, and without evidence of a subjective intent to harm as opposed to a good faith effort to restore order in the facility.

Next, the force does not violate clearly established applicable constitutional standards. *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) did remove the subjective intent component for excessive force claims under the Fourteenth Amendment by pre-trial detainees. However, *Kingsley* left Eighth Amendment jurisprudence undisturbed, noting "the language of the two Clauses differs, and the nature of the claim often differs…[and] there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional." *Kingsley*, 135 S.Ct. at 2475. Either Plaintiff's claim is still subject to the Eighth Amendment subjective intent standard as in *Canell*, or it is an open question as to which standard applies. In such a case, it would not be clear to a reasonable deputy in Defendants' position whether what they were doing constituted a constitutional violation absent a subjective intent to injure.

Indeed, there is no case that stands for the preposition that using force to handcuff, transport, and secure a violent, assaultive sentenced inmate in custody is a clear violation of the

Page 17 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW

constitution.  See *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir 2003)(qualified immunity for corrections guard who shot inmate with less-lethal round in leg, resulting in broken bone, when reasonable officer could perceive less-lethal as necessary to stop an assault and restore order).  There is neither an on-point body of caselaw to the contrary, nor evidence of any subjectively malicious intent to punish on this record by any named defendant.

Qualified immunity is appropriate for every individual defendant on each *Saucier/Pearson* prong for the excessive force federal claims as set forth in this motion and accompanying declarations, on this record.  Defendants do appreciate Plaintiff's version of events likely differs.  Plaintiff has experience with the federal courts and has the right and obligation to make his record under Fed. R. Civ. P. 56(c).  Defendants respectfully submit they will review any materials Plaintiff submits to sustain his burden under Fed. R. Civ. P. 56(c) in response to this motion and, following review of Plaintiff's submissions, particular individual defendant(s) may withdraw this particular motion if there is admissible record evidence demonstrating a genuine issue of material fact as to the allegations against that Defendant.  In any case, it is appropriate for the Court to rule at this time that the Eighth Amendment applies.

### 4. Claim 3: Plaintiff Cannot Show a *Monell* Theory for Inadquate Medical Care.

Plaintiff received constant medical care while in Multnomah County custody meeting the applicable standard of care in the community.  Further, the analysis for the *Monell* excessive force claim applies here with equal force.  Plaintiff has not identified any policy, practice, or custom of County Health that was itself deliberately indifferent to Plaintiff's serious medical needs or caused him such a deprivation under the Eighth Amendment.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010).

Page 18 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
OF LAW

**5.      Claim 4: Defendants Provided Appropriate Medical Care and Have Qualified Immunity from a Deliberate Indifference Suit.**

All providers from Multnomah County provided care commensurate with the applicable standards.  Also, each provider is immune under the "clearly established" prong of *Saucier*.  As of 2017, the same deliberate indifference standard applied to all detainees for medical care cases. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).  It was not until 2018 that the Ninth Circuit applied the *Castro/Kingsley* rationale to claims of inadequate medical care by pretrial detainees.  See *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). ("We have recently recognized that *Castro*'s objective deliberate indifference standard extends to Fourteenth Amendment claims by pretrial detainees for violations of the right to adequate medical care," citing *Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018). Defendants respectfully submit that the Eighth Amendment standards apply for the reasons stated above, but for qualified immunity purposes the progression of caselaw since Plaintiffs' incarceration is relevant.

As such, under then-existing precedent it was not clearly established that (1) any of the treatment Defendants provided to Plaintiff was improper, or (2) any of the care would be constitutional improper without a subjective inference of a substantial risk of serious harm to Plaintiff.  *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014).  Summary judgment on the medical claims is appropriate under either prong of the qualified immunity test.

**B.      CLAIMS 5 – 7: Oregon Tort Claims**

**1.      Claim 5: Multnomah County and its Officers are not Liable for Justified and Statutorily Protected Physical Contact.**

Oregon has long recognized peace officers are required to use force to carry out their duties, and our courts have long held officers are entitled to use reasonably necessary force. *Rich*

Page 19 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

*v. Cooper*, 234 Or. 300, 309-310, 380 P.2d 613 (1963).  In Oregon, the tort of battery is a voluntary act that causes intentionally harmful or offensive contact with another, assault the "intentional attempt to do violence to the person of another, coupled with present ability to carry the intention into effect."  *Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48–49, 293 P2d 717 (1956).

A battery claim against a deputy in the line of duty is not the same as a claim against a private citizen, given the statutory and common-law rule allowing reasonable force.  The reasonableness element aligns with the rationale set forth in *Graham*; a deputy should not be forced to justify and defend every shove in a court of law.  The California courts have articulately stated this reasoning as follows:

> "A state law battery claim is a counterpart to a federal claim of excessive use of force.  In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 171 Cal App 4th 516, 527, 89 Cal Rptr 3d 801 (2009), citing *Munoz v. City of Union City*, 120 Cal App 4th 1077, 1102, 16 Cal Rptr 3d 521 (2004).[9]
>
> ….    ….    ….
>
> "We must never allow the theoretical sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.  What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure….[p]lacing the burden of proof on the plaintiff to establish that an officer's use of force was unreasonable 'gives the police appropriate maneuvering room in which to make such judgments free from the need to justify every action in a court of law.'" *Brown*, 171 Cal App 4th at 528, 89 Cal Rptr 3d 801 (2009), citing *Martinez v. County of Los Angeles*, 47 Cal App 4th 334, 343, 54 Cal Rptr 2d 772 (1996);

---

[9] The elements of a civil battery between private citizens in California are identical to those in Oregon.  *Brown v. Ransweiler*, 171 Cal App 4th 516, 527, 89 Cal Rptr 3d 801 (2009), citing *Piedra v. Dugan*, 123 Cal App 4th 1483, 1495, 21 Cal Rptr 3d 36 (2004).

Page 20 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
      OF LAW

*Edson v. City of Anaheim*, 63 Cal App 4th 1269, 1273, 74 Cal Rptr 614 (1998).

…    …    …

"Indeed, any other rule would invite a flood of litigation.  If the law required police to defend the reasonableness of their conduct any time a plaintiff made a prima facie case by showing an offensive touching, the already heavy burdens law enforcement bears for us would become cetaceous.  And we would all suffer."
*Edson*, 63 Cal App at 1275, 74 Cal Rptr 614."

Oregon's law is no different.  A claim against a sheriff's deputy necessarily adds the element of reasonableness to a battery claim.  If not, every application of handcuffs to an arrestee or detainee would be a jury question, a situation disfavored by our jurisprudence.

For the same reasons identified above in response to the federal force claims, summary judgment is warranted on the state battery claims.

### a.    Multnomah County is Immune Under ORS 161.205(2) and ORS 30.265.

For state tort claims, the Oregon Tort Claims Act ("OTCA") provides the sole cause of action against public bodies like Multnomah County.  ORS 30.265(2).   The OTCA immunizes Multnomah County from any "claim arising out of an act done…under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice."  ORS 30.265(6)(f).

Oregon law provides force used in defense of self and others is justified, as is force by a jail official when reasonably believed necessary to maintain order and discipline.  ORS 161.209, ORS 161.205(2).  Oregon courts apply these justification statutes in tort claims for battery involving peace officers.  See *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 764, 537 P2d

Page 21 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

121 (1975)(statute on justification for use of force by arresting officer ORS 161.235 applied to bar civil battery suit against officer by arrestee).

So too, here.  The application of the defense and jail official statutes to these facts preclude an action for battery, and officers using such force consistent with the statutes are immune given the apparent authority conferred by the statutes and *Gigler.  Cruz v. Multnomah County*, 279 Or. App 1, 19, 381 P.3d 856 (2016).

        **2.**        **Claim 6: Multnomah County's Care Met the Applicable Standards of Care.**

In order for Plaintiff to prevail on a medical negligence claim under Oregon law, he must prove through expert testimony that the County medical staff did not meet the applicable standard of care exercised by a reasonably careful medical professional with like training and expertise in the community.  ORS 677.095(1), *Rogers v. Meridian Park Hosp*., 307 Or 612, 619, 772 P2d 929 (1989).  Plaintiff must also prove, through expert testimony, that any such failure on the part of the County to meet the requisite standard was the legal cause of harm to the Plaintiff.  *Joshi v. Providence Health Systems of Oregon Corp.*, 342 Or. 152, 156-157, 149 P.3d 1164 (2006).  Because the standard of care is beyond an average juror's knowledge, Plaintiff must come forward with expert testimony as what is reasonable conduct for a medical professional, and whether failure to meet that standard caused injuries.  *Tiedemann v. Radiation Therapy Consultants, PC*, 299 Or. 238, 246, 701 P.2d 440 (1985); *Getchell v. Mansfield*, 260 Or. 174, 179, 489 P.2d 953 (1971).

The Declaration of Michael Seale establishes Plaintiff received care at MCDC consistent with that degree of skill, care, and diligence used by ordinarily careful medical personnel practicing under the same or similar circumstances in the community.  There is no evidence that

Page 22 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW

Defendants' care caused any harm or injury.  Unless Plaintiff comes forth with contradictory, qualified expert opinion that any Defendant was negligent, and that such negligence caused harm, then there is no genuine issue of material fact and Defendants are entitled to summary judgment.  *Id., Moore v. Kaiser Permanente*, 91 Or. App. 262, 265, 754 P.2d 615 (1988).

### 3.    Claim 7: The Defamation Claim is Time Barred and All Purported Communications are Privileged Under Oregon Law.

Finally, Plaintiff complains of defamatory statements contained in deputies' reports of the incident.  (ECF 38, pp 45-46).  First, the statements at issue were in 2017, and this action was commenced on June 25, 2019.  (ECF 2).  Oregon has a one year statute of limitations on defamation claims, accruing from date of publication, including claims under the OTCA.  ORS 12.120(2), ORS 30.275(9).    The claim is not timely.

Second, Oregon recognizes an absolute privilege for statements made in furtherance of public duties.  *Christianson v. State,* 239 Or App 451, 459, 244 P3d 904, 908 (2010), *Chamberlain v. City of Portland,* 184 Or App. 487, 56 P 3d 497 (2002). This privilege is rooted in the maxim that "the public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation." *Johnson v. Brown*, 193 Or. App. 375, 381, 91 P.3d 741, 744, decision clarified on reconsideration, 194 Or. App. 486, 95 P.3d 235 (2004), citing *Wallulis v. Dymowski*, 323 Or 337, 349, 918 P2d 755 (1996). Absolute privilege bars a defamation claim completely as a matter of law. *DeLong v. Yu Enterprises, Inc.,* 334 Or 166, 170, 47 P3d 8 (2002).

Because these reports were generated in the exercise of the MCSO staff's work as the corrections department for the County, the statements are privileged and cannot serve as defamation as a matter of law.

Page 23 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW

## VII.    CONCLUSION

Defendants request this Court grant summary judgment on each and every claim by Plaintiff and award Defendants their recoverable costs and fees.

Dated this 31st day of August, 2020.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ B. Andrew Jones**

_____

B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
    *Of Attorneys for Defendants*

Page 24 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
      OF LAW

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 31, 2020, I arranged for service of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW** on:

    Cyrus Andrew Sullivan
    PO Box 86653
    Portland, OR 97286
    Email: sullivancyrus@hotmail.com

by the following method or methods as indicated:

( )    by **mailing** to said person(s) a true copy thereof, said copy placed in a sealed envelope, postage prepaid and addressed to said person(s) at the last known address for said person(s) as shown above, and deposited in the post office at Portland, Oregon, on the date set forth above.

( )    by **e-mailing** to said person(s) a true copy thereof in Word format, at the email address as shown above, pursuant to L.R. 5.2(b).

( )    by **facsimile** to said person(s) a true copy thereof at the facsimile number shown above, which is the last known facsimile number for said person(s) on the date set forth above. A copy of the confirmation report is attached hereto.

( **X** )    by **email** to said person(s) at their last known email address(es) shown above and through the Court's efiling system.

                          **/s/ Ona Davis**

                          _____

                          Ona Davis
                          Paralegal for B. Andrew Jones

Page 1 – CERTIFICATE OF SERVICE