JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
Andrew Weiner, OSB No. 115485
Assistant County Attorney
Multnomah County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:  (503) 988-3377
E-mail: andrew.weiner@multco.us
    *Of Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| CYRUS ANDREW SULLIVAN, | No. 3:19-cv-00995-JGZ |
| Plaintiff, | |
| v. | DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| MULTNOMAH COUNTY, et al, | |
| Defendants. | |

## LR 7-1 CERTIFICATION

The undersigned certifies that counsel for Defendants Multnomah County, Multnomah County Health Department, and Sheriff Mike Reese in his official capacity (hereinafter, Defendants") conferred with Plaintiff in a good faith effort to resolve the subject matter of this motion but was unable to do so. Most recently the parties discussed summary judgment with the

Page 1 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Court during the August 4, 2022 scheduling conference. The Court's ruling is necessary on these matters.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 56-1, Defendants move for summary judgment on the following claims: (1) *Monell* claim regarding an alleged custom of failing to ensure detainees receive adequate medical care due to scheduling conflicts; (2) *Monell* claim regarding policy of not allowing hard braces into the county jail; and (3) state-law negligence claim based on alleged deficiencies in medical care. This motion is supported by the following Memorandum of Law, the Declaration of Brandon Pedro with attached exhibits, the Declaration of Dr. Michael Seale with attached exhibit, the Declaration of Dr. Kevin Murphy with attached exhibit, and the pleadings on file herein.

## SUMMARY OF THE CASE

On June 28, 2017, Plaintiff Cyrus Sullivan physically assaulted Multnomah County Sheriff's Deputy Tim Barker and other deputies at the Multnomah County Detention Center. Plaintiff was being held on a violation of his sentence in *United States v. Sullivan*, District of Oregon Case No 3:14-CR-00190-JGZ. Plaintiff pled guilty to assaulting Deputy Barker, *United States v. Cyrus Sullivan*, District of Oregon Case No 3:17-CR-00306-JGZ. During a struggle with the deputies immediately following Plaintiff's assault, Plaintiff sustained a fracture to his left arm. Plaintiff alleges the deputies broke his arm later, after moving him to a different cell.

Multnomah County Corrections Health staff provided Plaintiff medical care for his arm, including transport to outside medical providers. While Plaintiff remained in the County's custody, Corrections Health staff provided ongoing treatment and care related to Plaintiff's injury, consistent with the advice of medical specialists, and in accordance with the jail's safety and security protocols. Plaintiff left County custody in September, 2017.

Page 2 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants previously filed a motion for summary judgment on all of Plaintiff's claims. (ECF No. 40.) This Court granted the motion in part and denied it in part. (ECF No. 55.) The Court denied summary judgment on Plaintiff's two surviving *Monell* claims and the state-law medical negligence claim. (*Id.* at 24, 25–26.) In addition, pursuant to ORS 30.265, the Court dismissed all defendants other than the County on the medical negligence claim. (*Id.* at 26.) Now, pursuant to the Court's August 5, 2022 Minute Order (ECF No. 64), Defendants renew their motion for summary judgment on these three claims.

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiff's *Monell* claims fail because there is no evidence to support a finding that the County's policies and practices were a moving force behind the alleged violations of Plaintiff's constitutional rights, and because there is no evidence to support a finding that the policies and practices at issue were implemented with deliberate indifference. On Plaintiff's negligence claim, the Defendants provided medical care and treatment that met community standards. Plaintiff's expert reports do not create a question of material fact sufficient to overcome summary judgment on these claims.

## I.      Statement of Material Facts.

Defendants incorporate herein the statement of material facts from Defendants' prior summary judgment motion and supporting declarations. (ECF No. 40 at 2–10.) For the Court's convenience, Defendants include here those facts most relevant to the current motion.

After an altercation with deputies at the Multnomah County Detention Center ("MCDC") on June 28, 2017, Plaintiff reported that he thought his arm was broken. (*Id.* at 9.) Deputies alerted medical staff, and Plaintiff was transported to the hospital at Oregon Health & Science University ("OHSU") for emergency treatment. (*Id.*) Physicians at OHSU diagnosed Plaintiff

Page 3 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

with a fractured left humerus. (*Id.*) The orthopedist who treated Plaintiff at OHSU discharged him with a recommendation he immobilize his arm using a sling and swath, and a treatment plan that included Norco (a combination of acetaminophen and hydrocodone) for pain and icing as needed. (*Id.*; Seale Declaration, Ex. 1 (hereinafter, "Seale Report") at 2.) The orthopedist also asked to see Plaintiff for a follow-up appointment after one week. (Seale Report at 2.) During a nursing evaluation at the jail on the following day, Plaintiff reported that the Norco was "managing his pain." (*Id.*)

Plaintiff was scheduled for a follow-up appointment at OHSU on July 7, 2017. (*Id.*) That appointment was rescheduled for July 10 because Plaintiff had a conflicting appearance in federal court. (*Id.* at 2–3.) When the July 10 appointment was cancelled due to a corrections staffing issue, jail medical staff arranged for an on-site x-ray and evaluation by an orthopedic physician's assistant at the jail on July 12. (*Id.* at 3.) Plaintiff denied numbness or pain during the July 12 evaluation, and the orthopedic physician's assistant recommended Plaintiff continue using a sling but could stop using the swathe. (*Id.*) Plaintiff's pain medication was renewed for continued pain management, and the orthopedic physician's assistant recommended a follow-up after two weeks. (*Id.*) Plaintiff already had an appointment at OHSU scheduled for July 19 (one week later), but that appointment was rescheduled for August 3. (*Id.*)

Plaintiff was reevaluated by OHSU Orthopedics on August 3. (*Id.*) An x-ray taken on that date showed the facture was healing at a slight angle. (*Id.*) The orthopedist considered implementing a Sarmiento brace (a hard plastic brace), but it was not approved by the deputies who accompanied Plaintiff because it contained metal parts. (*Id.*; Am. Compl. at 15.) Adults in custody are not permitted to possess any item that is or can be used as a weapon, even when the same item would not be considered dangerous outside the jail facility. (Pedro Decl., ¶ 4, Ex. 1.)

Page 4 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The orthopedist recommended continuing with nonoperative treatment, using a sling for immobilization, and weaning Plaintiff from narcotic pain control. (Seale Report at 3–4.)

Corrections Health staff followed the orthopedist's recommendations. Corrections Health staff ordered and administered non-narcotic pain medication, weaning Plaintiff off Norco, and Plaintiff continued using a sling. (*Id.*) By the end of August, Plaintiff reported that his pain had improved. (*Id.*) Plaintiff was released from County custody on September 14, 2017. (*Id.*) An evaluation at OHSU Orthopedics in 2020 indicated that the fracture healed with slight angulation, and no follow up was recommended. (*Id.*)

## II.    Summary Judgment Standard.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* This burden is not a light one. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

Summary judgment is designed to eliminate factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not a shortcut; it is the tool by which factually or legally insufficient claims or defenses are adjudicated without the attendant unwarranted consumption of private and public resources associated with trial. *Id.* at 327. The court must draw all reasonable inferences in favor of the nonmoving party, but must grant summary judgment when the record as a whole does not support a genuine issue for trial. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a

Page 5 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

factual dispute would not affect the outcome of the claim (*i.e.*, the fact is not material), the court should grant summary judgment notwithstanding the dispute. *Id.*

### III.    Plaintiff's *Monell* Claims Fail as a Matter of Law.

To establish municipal liability, Plaintiff is required to show that a County custom or policy caused the violation of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The municipality itself must cause the constitutional deprivation—*respondeat superior* cannot form the basis for liability against Defendants. *See Id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff must show that a formal County policy or longstanding practice or custom that can be fairly described as County policy was the "moving force" behind the alleged constitutional violation.[1] *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). A claim may allege that a particular policy violates federal law or directs an employee to do so—a theory referred to as "direct path" liability. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143–45 (9th Cir. 2012). Alternatively, a claim may be based on a longstanding practice of inaction or omission. *Id.*

Plaintiff's *Monell* claims appear to be based on a theory of "direct path" liability. He alleges that Defendants have customs and/or policies that resulted in constitutionally inadequate medical care: (1) a custom of not ensuring that medical appointments do not conflict with court dates; and (2) a policy that prohibits the use of hard medical braces in the jail. (Am. Compl. at

---

[1]The two other avenues to municipal liability under Section 1983, decision(s) by a final policymaker or ratification of subordinate's unconstitutional actions by final policymaker, are not pled. Because the complaint is the only notice Defendants have of Plaintiff's case theory, these allegations define the claim and substantive law. *Pickern v. Pier One Imports (US), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).

Page 6 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

14–15, 42–43.) Plaintiff alleges that these customs and/or policies failed to protect him from harm by preventing him from timely attending medical appointments and prohibiting the use of a Sarmiento brace.

It is imperative this Court apply "rigorous standards of culpability and causation" to Plaintiff's theory of liability ". . . to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Harris*, 489 U.S. at 391–92). A failure to apply these rigorous standards creates a risk of impermissible *respondeat superior* liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official."). Plaintiff's "failure to train" theories are where municipal liability "is at its most tenuous," for fear of collapsing *Monell* liability into *respondeat superior*. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Tuttle*, 471 U.S. at 822–23).

To meet the rigorous standards of culpability, Plaintiff must show Defendants were deliberately indifferent to the risk of harm (*i.e.*, that Defendants had actual or constructive notice that a particular deficiency was substantially certain to result in a constitutional violation). *See Tsao*, 698 F.3d at 1145; *see also Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (Plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard"). It is only when faced with prior notice that the municipality can fairly be said to have made the deliberate decision to continue the *status quo* notwithstanding the likelihood of a constitutional harm. *Tsao*, 698 F.3d at 1145.

Likelihood is imperative—the mere possibility of a violation is not sufficient. The deficiency must be "substantially certain" to result in a constitutional violation. *Castro*, 833 F.3d

Page 7 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

at 1076 (citing *Harris*, 489 U.S. at 396); *see also* Ninth Circuit Model Jury Instruction 9.8. Municipal liability also requires plaintiffs establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Vasquez v. Cty. of Santa Clara*, 803 F. App'x 100, 102–03 (9th Cir. 2020) (citing *Castro*, 833 F.3d at 1075–76).

### A.    Medical Appointment Scheduling.

Plaintiff cannot establish a *Monell* claim based on an alleged custom of jail staff not ensuring that medical appointments do not conflict with court dates. Plaintiff offers nothing more than conclusory allegations regarding a purported lack of training regarding potential scheduling conflicts. Bare recitation of elements of a *Monell* claim is insufficient to survive summary judgment. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Outside medical appointments are, by necessity, scheduled in advance based on specialist availability. (Seale Report at 4.) When there is a conflict, appointments are rescheduled as soon as practicable. (*Id.*) There is no custom, policy or practice by which jail staff knowingly disregard potential scheduling conflicts with inmates' court appearances. (*Id.*) Plaintiff's speculation about jail staff training (*See* Am. Compl. at 42) is insufficient to meet the demanding burden of a failure to train theory, a theory on which a *Monell* claim is at its most tenuous. *Connick*, 563 U.S. at 62. Plaintiff's experts do not provide any support for this claim. Their reports offer no opinion regarding the allegation that a purported custom of disregarding potential scheduling conflicts was a "moving force" that resulted in Plaintiff receiving constitutionally inadequate medical care. (*See* Murphy Declaration, Ex. 1 (hereinafter, "Murphy Report") at 20–21.)

There is no evidence to support a finding that Defendants were deliberately indifferent to the possible risk that rescheduling an outside medical appointment would likely result in a

Page 8 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

constitutional deprivation. Indeed, the facts in the record demonstrate the opposite. When jail staff realized there was a scheduling conflict with Plaintiff's follow-up appointment at OHSU, another appointment was scheduled just a few days later. (Seale Report at 2–3.) When that appointment needed to be cancelled due to a corrections staffing issue, jail medical staff arranged for on-site x-ray and evaluation by an orthopedic physician's assistant, which occurred less than one week after the date of the original follow-up appointment. (*Id.*) Jail medical staff acted to provide Plaintiff timely and appropriate medical care.

Finally, none of the medical professionals who treated Plaintiff noted that the brief delays caused by rescheduling Plaintiff's appointments resulted in inadequate medical treatment. The orthopedic physician's assistant who saw Plaintiff on July 12, 2017 recommended Plaintiff continue using a sling and did not recommend another follow-up appointment for two weeks. (*Id.* at 3.) When Plaintiff returned to OHSU for a follow-up appointment on August 3, 2017, the orthopedist found that Plaintiff's fracture was healing, encouraged movement of the arm at elbow and shoulder with limited weight bearing, and continued to recommend nonoperative treatment. (*Id.* at 3–4.) There is no evidence Defendants had any notice that rescheduling outside medical appointments as needed to accommodate conflicting court dates or staffing issues was substantially certain to result in a constitutional violation. *See Tsao*, 698 F.3d at 1145.

## B.     Hard Medical Braces.

Plaintiff's *Monell* claim based on the jail's policy of prohibiting certain medical adaptive devices (*e.g.*, hard braces) to minimize safety and security risks also fails as a matter of law. Plaintiff alleges that, as result of this policy, his arm did not heal properly because he was not allowed use of a Sarmiento brace. Plaintiff relies on an expert opinion from Dr. Clive Segil, who opines that a Sarmiento brace would have improved the positon and recovery of the fracture and

Page 9 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

reduced Plaintiff's pain. (*See* Murphy Report at 20.) Even if Plaintiff could establish a medical negligence claim on this basis, which Defendants dispute, it is not enough to survive summary judgment on the *Monell* claim because there is no evidence the jail's policy showed deliberate indifference to Plaintiff's right to receive adequate medical care or was followed in reckless disregard for Plaintiff's health.

Plaintiff's medical records establish that the orthopedic specialist who first examined Plaintiff recommended the use of sling and swathe to immobilize Plaintiff's arm. (Seale Report at 2; Murphy Report at 8.) When the orthopedist who saw Plaintiff at an August 3, 2017 follow-up appointment considered using a Sarmiento brace, corrections deputies said it would not be permitted in the jail based on safety and security concerns. (Seale Report at 3; Am. Compl. at 15.) Jail policy prohibits adults in custody from possessing any item that is or could be used as a weapon, even when the same item would not be considered dangerous outside the jail facilities. (Pedro Decl. at ¶ 4.) For medically adaptive devices such as hard braces, jail staff evaluates items on an individual and as-needed basis, and accommodations for compatible adaptive devices are made when a device is prohibited based on safety and security. (*Id.* at ¶ 5.)

Here, there is no evidence that the orthopedist believed a Sarmiento brace was necessary. In fact, the orthopedist continued to recommend nonoperative treatment and immobilization with a sling. (Murphy Report at 9.) This recommendation is in accord with Dr. Murphy's opinion that a Sarmiento brace does not result in appropriate immobilization for the type of fracture at issue, and that nonoperative management with a sling and swathe was an appropriate treatment course. (*Id.* at 22.) Jail staff's adherence to the orthopedists' treatment recommendation shows that they acted with the opposite of deliberate indifference or reckless disregard for Plaintiff's health.

Page 10 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

That Plaintiff's expert opines a Sarmiento brace would have improved the positon and recovery of the fracture and reduced Plaintiff's pain is not enough to establish a constitutional claim for deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (plaintiff's showing of nothing more than "a difference of medical opinion" as to the need to pursue one course of treatment over another was insufficient, as a matter of law, to establish deliberate indifference); *Gillen v. D'Amico*, 237 F. App'x 173, 173–74 (9th Cir. 2007) (unpublished opinion). In *Gillen*, prison officials denied a prisoner's request for a replacement prosthetic leg after he complained that it fit poorly and caused him pain. *Id.* Plaintiff's disagreements with the offered alternatives (e.g., the use of crutches, a cane, or a wheelchair) was insufficient to establish that prison officials acted with deliberate indifference. *Id.*

Even if Dr. Segil's opinion regarding the use of a Sarmiento brace is credited, Dr. Segil does not say that Plaintiff's arm did not heal properly. (*See* Murphy Report at 20.) There is no dispute between the experts that the ultimate functional outcome with regard to the fracture was within normal limits for such an injury. (*See* Murphy Report at 22–23.) This conclusion is also supported by progress notes from a March 12, 2020 visit at OHSU, at which the treating physician found that Plaintiff was doing well clinically, and that Plaintiff's arm was healed. (Murphy Report at 10–11.)

Finally, even assuming Defendants' policy of prohibiting certain medical adaptive devices could increase the risk of reduced medical outcomes, Defendants have a compelling justification: ensuring the safety and security of jail staff and other adults in custody. Jail staff "should be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321–22, (1986) (quoting *Bell v. Wolfish*, 441 U.S.

Page 11 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

520, 547 (1979)). The policy, which balances these important concerns, does not show deliberate indifference to Plaintiff's right to receive adequate medical care. *See Kingsley v. Hendrickson*, 576 U.S. 389, 399–400 (2015) ("[A]s part of the objective reasonable analysis . . . [,] deference to policies and practices needed to maintain order and institutional security is appropriate.").

## IV. Plaintiff's State Law Medical Negligence Claim Fails as a Matter of Law.

Plaintiff appears to argue that jail staff were negligent by disregarding known risks related to the treatment of Plaintiff's injury. (Am. Compl. at 45.) The County does not dispute that it had a duty to take reasonable actions under the circumstances to provide Plaintiff necessary medical care. *See Nordenstrom for Est. of Perry v. Corizon Health, Inc.*, No. 3:18-CV-01754-HZ, 2021 WL 2546275, *21 (D. Or. June 18, 2021); *Fuhrer v. Gearhart-By-The-Sea, Inc.*, 306 Or. 434, 440 (1988). The scope of that duty, however, was limited to those harms that were reasonably foreseeable. *Towe v. Sacagawea, Inc.*, 357 Or. 74, 87 (2015); *Stewart v. Kids Inc.*, 261 P.3d 1272, 1277 (Or. App. 2011).

To survive summary judgment, Plaintiff must establish through expert testimony a question of material fact regarding whether County medical staff failed to meet the applicable standard of care. ORS 677.095(1); *Rogers v. Meridian Park Hosp.*, 307 Or 612, 619, 772 P2d 929 (1989). Plaintiff must also establish, through expert testimony, that any such failure on the part of the County to meet the requisite standard of care was the legal cause of his alleged harm. *Joshi v. Providence Health Systems of Oregon Corp.*, 342 Or. 152, 156-157, 149 P.3d 1164 (2006). Plaintiff cannot do so.

Dr. Segil's conclusory opinions regarding Plaintiff's medical treatment do not create a question of material fact sufficient to survive summary judgment. Dr. Segil asserts that surgery or a Sarmiento brace would have improved the outcome, and that this suggested course of treatment would not have resulted in a mal-united fracture. (Murphy Report at 20.) These

Page 12 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

opinions do not create a question of material fact on Plaintiff's negligence claim because they relate to treatment recommended and provided by physicians at OHSU. The physicians at OHSU recommended the nonoperative treatment that Plaintiff alleges was negligent—not jail medical staff. In addition, Dr. Segil offers no opinion that would contradict Dr. Murphy's opinion that nonoperative management of Plaintiff's injury with a sling was also an appropriate treatment option. (*See* Murphy Report at 22–23.) Dr. Segil merely opines that surgery or the use of a hard brace would have been better. Dr. Segil's opinions do not support the conclusion that it was foreseeable to jail medical staff that following the recommendations of the OHSU physicians would result in harm to Plaintiff.

Dr. Segil's expert report also fails to create a triable question of fact to the extent Plaintiff argues that the medical treatment jail staff provided was negligent because it caused him unnecessary pain. Dr. Segil's opinion that using a Sarmiento brace would have reduced Plaintiff's pain by keeping a rigid immobilization of the fracture is speculative at best. (*See* Murphy Report at 20.) The Sarmiento brace was considered as a treatment option on August 3, 2017—more than a month after the injury. By that time, the fracture was showing signs of healing, and the orthopedist recommended weaning Plaintiff off pain medication. (*Id.* at 9.) Medical records show that jail medical staff followed the orthopedist's recommendations, weaning Plaintiff off Norco and providing non-narcotic medication for continued pain control. (Seale Report at 4.) Moreover, Dr. Segil offers no opinion with regard to the appropriateness or efficacy of the pain treatment that jail staff actually provided Plaintiff.

Insofar as Plaintiff relies on Dr. Segil's opinion for the theory that his arm would have healed better if he was permitted use of a Sarmiento brace, that too fails to create a triable issue of fact. When the Sarmiento brace was considered as a treatment option, Plaintiff's arm was

Page 13 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

already healing at a slight angle. (*Id.* at 3; Murphy Report at 9.) It is well recognized that the type of fracture Plaintiff suffered often heals with slight malalignment, and the angle at which Plaintiff's arm healed is well within acceptable limits. (Murphy Report at 22–23.) In addition, medical records show that Plaintiff has minimal functional limitations as a result of the way his arm healed, which is not even addressed in Dr. Segil's report. (*Id.* at 20, 22–23)

Finally, Dr. Segil's opinion that Plaintiff would have received better care from other orthopedic surgeons with similar training and experience in the community lacks sufficient foundation. (*See* Murphy Report at 20.) Dr. Segil's practice appears to be limited to Southern California, and he does not appear to have any experience with medical treatment in the corrections setting. More importantly, Dr. Segil's opinion regarding care provided by the orthopedic surgeons who treated Plaintiff does not support Plaintiff's claim against the County. The orthopedic surgeons who treated Plaintiff were employed by OHSU—not the County. Dr. Seale's opinion that Plaintiff received care from jail medical staff consistent with standards in the community is unrebutted by Dr. Segil's expert report. (Seale Report at 4.)

Dr. Murphy's opinion that the diagnosis, treatment, and ultimate functional outcome of Plaintiff's injury was within normal limits of the accepted community standards and standards of care for such an injury is supported by citation to relevant orthopedic literature. (Murphy Report at 22–23.) Dr. Segil's conclusory opinions to the contrary, offered without sufficient foundation, do not create a triable issue of fact.

///

///

///

///

Page 14 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## CONCLUSION

For the above-stated reasons, Defendants are entitled to summary judgment in their favor

on Plaintiff's remaining *Monell* claims and state-law medical negligence claim.

Dated this 23rd day of September, 2022.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

*/s/ Andrew T. Weiner*

Andrew Weiner, OSB No. 115485
Assistant County Attorney
    *Of Attorneys for Defendants*

Page 15 – DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2022, I arranged for service of the foregoing

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on:

Cyrus Andrew Sullivan
PO Box 86653
Portland, OR 97286
Email: sullivancyrus@hotmail.com

by the following method or methods as indicated:

( )    by **mailing** to said person(s) a true copy thereof, said copy placed in a sealed envelope, postage prepaid and addressed to said person(s) at the last known address for said person(s) as shown above, and deposited in the post office at Portland, Oregon, on the date set forth above.

( )    by **e-mailing** to said person(s) a true copy thereof in Word format, at the email address as shown above, pursuant to L.R. 5.2(b).

( )    by **facsimile** to said person(s) a true copy thereof at the facsimile number shown above, which is the last known facsimile number for said person(s) on the date set forth above. A copy of the confirmation report is attached hereto.

( **X** )    by **email** to said person(s) at their last known email address(es) shown above and through the Court's efiling system.

**/s/ Ona Davis**

_____

Ona Davis
Paralegal for Andrew Weiner

Page 1 – CERTIFICATE OF SERVICE