IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Cyrus Andrew Sullivan,<br><br>    Plaintiff,<br><br>v.<br><br>Multnomah County, et al.,<br><br>    Defendants. | No. 3:19-CV-00995-JGZ<br><br>**ORDER** |

Pending before the Court are Sullivan's Motion to Suppress (Doc. 73); Sullivan's *Daubert* Motion (Doc. 73); Multnomah County Defendants' and Sullivan's Cross-Motions for Summary Judgment on Sullivan's *Monell* and state-law negligence claims (Docs. 65, 73); and Sullivan's Motion for Summary Judgment on his Fourteenth Amendment excessive-force and state-law assault and battery claims. (Doc. 73.) The motions are fully briefed. (Docs. 65, 66–68, 73, 77, 79.) The Court will grant Multnomah County's Partial Motion for Summary Judgment as to Sullivan's two *Monell* claims. The Court will deny the remainder of Multnomah County's Motion, the remaining motions for summary judgment, and Sullivan's Motion to Suppress. The Court will deny in part Sullivan's *Daubert* Motion and hold a *Daubert* hearing prior to trial to address Dr. Murphy's causation opinion.

**I.     Sullivan's Motion to Suppress**

Sullivan filed a Motion to Suppress, requesting that the Court exclude Multnomah County's declarations and expert reports. First, Sullivan asks that the Court find

inadmissible the declarations of Dr. Kevin Murphy (Doc. 66); Dr. Michael Seale (Doc. 67); and Sgt. Brandon Pedro (Doc. 68) because Multnomah County disclosed them in September 2022, after the parties' July 20, 2022 discovery deadline. (Doc. 73 at 2.) Next, Sullivan challenges the expert witness reports of Dr. Murphy and Dr. Seale because they are unsworn. (*Id.*) Third, Sullivan challenges Dr. Murphy's expert witness report because it lacks the venues, case numbers, and citations of cases which Dr. Murphy worked on previously. (*Id.* at 3.)

The Court will not exclude Dr. Murphy, Dr. Seale, and Sgt. Pedro's belatedly submitted declarations because Sullivan is not prejudiced by the late disclosure. Although Multnomah County did not disclose these declarations until two months after the discovery deadline, (*see* Docs. 63, 66–68), Sullivan does not contest Multnomah County's representation that it timely disclosed the substantive contents of the declarations, (*see* Docs. 77 at 2; 79). Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party is not allowed to use information not disclosed as by Rule 26(a) or (e), unless the failure to disclose was substantially justified or harmless. The timing of the disclosure of the declarations does not harm Sullivan if Multnomah County timely provided him with all relevant information included in the declarations.

Citing *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202 (D. Nev. 2008), Sullivan challenges Dr. Murphy and Dr. Seale's expert witness reports because they are unsworn. (Doc. 73 at 2.) Dr. Murphy and Dr. Seale's expert reports need not be sworn. As Multnomah County points out, *Shuffle Master, Inc.* interpreted a previous version of Rule 56 of the Federal Rules of Civil Procedure. (Doc. 77 at 2–3.) *See also* Fed. R. Civ. P. 56 Advisory Committee's Notes to 2010 Amendment ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary."). After the 2010 revisions to Rule 56, parties may cite unsworn materials that are capable of being presented in a form that would be admissible at trial. *See Mauer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017); *Cook v. Lee*, No. CV-17-02569-PHX-DGC-JFM, 2019 WL 2525373, at *4 (D. Ariz. June 19,

2019). The Court's analysis of the expert reports turns on whether Dr. Murphy and Dr. Seale are competent to testify on the matters stated rather than whether their reports were sworn or certified. *See* Fed. R. Civ. P. 56(c).

Finally, the Court will not exclude Dr. Murphy's expert report for failing to include details of the cases which Dr. Murphy testified in as an expert. Multnomah County argues, and Sullivan does not dispute, that Sullivan failed to meet and confer on this issue pursuant to LR 7-1. (*See* Docs. 77 at 3; 79.) Because it appears Sullivan made no good-faith effort to obtain this information, the Court will not exclude Dr. Murphy's expert report on this ground. Sullivan is directed to confer with Multnomah County to obtain further information regarding Dr. Murphy's past testimony.

For the foregoing reasons, the Court will deny Sullivan's Motion to Suppress.

## II.   Sullivan's *Daubert* Motion

Sullivan filed a *Daubert* Motion challenging Multnomah County's two experts: Dr. Seale and Dr. Murphy. (Doc. 73 at 3–12.) Dr. Seale is the medical director for the Corrections Health Division of Multnomah County Health Department (MCHD). (Doc. 67 at 4.) Multnomah County expects Dr. Seale to testify about MCHD's policies and procedures and Sullivan's treatment while incarcerated at the Multnomah County Detention Center (MCDC). (*See id.*) Dr. Murphy is a board-certified orthopedic surgeon, who Multnomah expects to testify about the cause and treatment of Sullivan's humerus fracture. (Doc. 66 at 1–2.)

Sullivan's *Daubert* Motion is governed by Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and

   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the proponent of the challenged expert testimony, Multnomah County has the burden of showing that the proposed testimony is admissible under Rule 702. *See* Fed. R. Evid. 104(a); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The trial court acts as a gatekeeper for expert testimony to ensure it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

  In its gatekeeping role, the Court may look to a variety of factors when evaluating expert testimony. *See* Fed. R. Evid. 702 Advisory Committee's Note to the 2000 Amendment. These include the five factors discussed by the Supreme Court in *Daubert*.[1] However, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The Court therefore has considerable leeway in deciding how to evaluate whether particular expert testimony is reliable. *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005).

  Sullivan contends Multnomah County's experts, Dr. Seale and Dr. Murphy, fail to meet Rule 702's reliability standard. For the reasons discussed below, the Court concludes Dr. Murphy is qualified to testify regarding Sullivan's medical treatment and a pretrial

---

[1] The Advisory Committee's Note to the 2000 Amendment to Rule 702 summarizes the five factors the Supreme Court discussed in *Daubert*:

1. whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;
2. whether the technique or theory has been subject to peer review and publication;
3. the known or potential rate of error of the technique or theory when applied;
4. the existence and maintenance of standards and controls; and
5. whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702 Advisory Committee's Note to the 2000 Amendment; *see also Daubert*, 509 U.S. at 593–94.

- 4 -

*Daubert* hearing is necessary to determine whether Dr. Murphy may testify as to the cause of Sullivan's humerus fracture.

### A. Dr. Seale

Sullivan argues Dr. Seale is unqualified as an expert witness under Rule 702 because his testimony is not the product of reliable principles and methods and, even if it was, he fails to reliably apply those principles and methods to the facts of this case. (Doc. 73 at 4–6.) According to Sullivan, Dr. Seale's testimony is not the product of reliable principles and methods because he lacks orthopedic experience and has worked almost entirely in the correctional setting. (*Id.*) Sullivan also contends Dr. Seale fails to reliably apply his experience to the facts of this case because he has a conflict of interest from personally treating Sullivan and maintaining long-term employment with Multnomah County. (*Id.*)

The Court finds that Dr. Seale's expert testimony is the product of reliable principles and methods. As Multnomah County points out, it has retained a different expert, Dr. Murphy, to testify about Sullivan's orthopedic care. (Doc. 77 at 5.) Dr. Seale's expert testimony centers on Multnomah County's policies for medical scheduling and medical adaptive devices as well as the medical treatment Sullivan received from MCHD. (*Id.*) Dr. Seale's more than two decades of experience as a medical director in correctional facilities qualifies him to reliably testify on these issues. (*See* Doc. 67 at 8–10.) Further, the fact that Dr. Seale's experience is largely limited to the correctional setting goes to the weight of his expert testimony rather than whether he is qualified to testify as an expert. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996).

The Court also finds that Dr. Seale's reported conflict of interest does not impair his reliability and render him unqualified as an expert. Like his correctional experience, Dr. Seale's long-term employment with Multnomah County goes to the weight of his expert testimony rather than whether he is qualified to testify as an expert. The confidential nature of Sullivan's medical information and Sullivan's prior physician-patient relationship with Dr. Seale also does not preclude Dr. Seale's expert testimony. Fairness considerations arise

- 5 -

when a party attempts to use a privilege both as a sword and a shield. *See In re Grand Jury Procs.*, 219 F.3d 175, 182 (2d Cir. 2000). That is, Sullivan cannot allege that Dr. Seale and his medical team were negligent and then attempt to exclude their relevant testimony on issues material to their alleged medical negligence.

Under Rule 702 of the Federal Rules of Evidence, Dr. Seale is qualified to reliably testify on Multnomah County's policies for medical scheduling and medical adaptive devices as well as the medical treatment Sullivan received from MCHD. The Court will therefore deny Sullivan's *Daubert* Motion as to Dr. Seale.

**B.     Dr. Murphy**

Sullivan challenges Dr. Murphy's qualifications and expert testimony under Rule 702's four requirements. According to Sullivan, Dr. Murphy (1) lacks expert knowledge that would be helpful to a factfinder; (2) bases his testimony on insufficient facts and data; (3) uses unreliable principles and methods; and (4) unreliably applies his experience to the instant case.

First, Sullivan asserts Dr. Murphy's opinion will not help a factfinder determine the cause of Sullivan's humerus fracture. (Docs. 73 at 10–11; 79 at 11.) Sullivan analogizes to the tale of Humpty Dumpty to support this contention: after Humpty Dumpty sat on a wall and had a great fall, an orthopedic surgeon could piece Humpty Dumpty back together but not opine on how or why Humpty Dumpty cracked the way he did. (*See* Doc. 73 at 10–11.) According to Sullivan, an expert would need a scientific background, in a field such as biomechanics, to be qualified to offer an opinion helpful to a factfinder tasked with determining exactly how Humpty Dumpty was injured. (*See id.*)

Multnomah County argues that Dr. Murphy's professional orthopedic experience is sufficient to establish the reliability of his opinion on causation. (Doc. 77 at 6.) For support, Multnomah County cites to footnote one in *Kennedy v. Collagen Corp.*, 161 F.3d 1226 (9th Cir. 1998), which states "a medical doctor's testimony regarding the cause of an injury may be based on experience and review of medical records only." (*Id.*) Sullivan points out that the *Kennedy* court's analysis focused on injections administered by medical doctors

- 6 -

rather than a broken bone caused by traumatic force. (Doc. 79 at 9–10.) *See also Kennedy*, 161 F.3d at 1227, n.1.

Second, and along the same lines as his first argument, Sullivan contends Dr. Murphy's testimony is the product of unreliable principles and methods because Dr. Murphy has had no training in biomechanics and offers no scientific explanation for his conclusion. (Docs. 73 at 8–9; 79 at 8–9.) According to Sullivan, this case involves a violent injury which requires a scientific breakdown of the mechanism of injury. (Doc. 79 at 8–9.) Thus, although Dr. Murphy is an orthopedic surgeon, Sullivan argues Dr. Murphy's "opinion is just about as good as any lay person" because Dr. Murphy neither attempts nor is qualified to offer a detailed breakdown of the biomechanics of Sullivan's injury. (*See* Docs. 73 at 8–9; 79 at 8–9.) Multnomah County contends Dr. Murphy's nearly two decades of practice as a board-certified orthopedic surgeon sufficiently establish the reliability of his opinion. (Doc. 77 at 6.)

Third, Sullivan argues that Dr. Murphy bases his testimony on insufficient facts and data by offering a conclusory and vague opinion with no descriptions of or citations to the sources on which he relied. (Doc. 73 at 7, 11–12.) For support, Sullivan points to the many references to "orthopedic literature" in Dr. Murphy's report. (*See* Docs. 66 at 25–26; 73 at 11–12.) Multnomah County contends Sullivan fails to provide adequate legal support establishing that more detailed and specific citations are necessary. (Doc. 77 at 7–8.) In addition, Multnomah County argues Dr. Murphy bases his testimony on his experience as a board-certified orthopedic surgeon and review of Sullivan's records rather than scientific studies or data that would require citations. (*Id.*)

Fourth, Sullivan contends that Dr. Murphy's causation opinion is unreliable because he fails to consider Sullivan's alternative theory for the cause of his humerus fracture. (Doc. 73 at 9.) Although he concedes that Dr. Murphy read and summarized the alternative theory, Sullivan argues Dr. Murphy must also address the theory directly and rebut it. (Doc. 79 at 9.) Multnomah County contends that Dr. Murphy's summary adequately demonstrates he considered the alternative theory. (*See* Doc. 77 at 7.)

Sullivan's first, second, and fourth arguments challenge Dr. Murphy's opinion on the cause of Sullivan's injury. The parties' positions establish a material dispute as to the admissibility of Dr. Murphy's causation opinion. The Court will therefore hold a *Daubert* hearing to make findings about the qualifications of Dr. Murphy and the reliability of his opinion on the cause of Sullivan's injury. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 n.10 (9th Cir. 1995) (trial courts must hold a *Daubert* hearing when there is conflicting evidence on the soundness and reliability of an expert opinion).

Sullivan's third argument centers on the lack of citations in Dr. Murphy's opinion on the treatment of Sullivan's injury. Expert opinion reports need not always include citations to published studies. *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1060 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003). Disputes on the "lack of textual authority" in an expert opinion also generally go to the weight, not the admissibility, of the expert testimony. *See Kennedy*, 161 F.3d at 1231 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). The Court therefore concludes Dr. Murphy, a board-certified orthopedic surgeon, is qualified to reliably testify on the treatment of Sullivan's humerus fracture based on Dr. Murphy's education and experience. Dr. Murphy's testimony, however, must not reference or rely on any specific studies or orthopedic literature, which were absent from his report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert opinion reports must include all bases for the opinion).

Consistent with the above, the Court will deny Sullivan's *Daubert* Motion as to the qualifications of Dr. Murphy and the reliability of his testimony regarding Sullivan's medical treatment. A pretrial *Daubert* hearing will be held to determine whether Dr. Murphy may testify as to the cause of Sullivan's humerus fracture.

**III.     Motions for Summary Judgment**

Summary judgment will be granted when the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict in favor

of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the court must not weigh the evidence but determine whether there is a genuine issue for trial. *Id.* at 294. A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record. *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).

The parties filed Cross-Motions for Summary Judgment on Sullivan's *Monell* and state-law negligence claims. Sullivan also filed a Motion for Summary Judgment on his remaining Fourteenth Amendment excessive-force and state-law assault and battery claims. The Court does not restate the background facts here and instead includes facts relevant to determination of the issues presented in its discussion of each issue.[2]

### A.   *Monell* Claims

To support his constitutional *Monell* claims, Sullivan alleges Multnomah County policies violated his Fourteenth Amendment right as a pretrial detainee to adequate medical care. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996). A pretrial detainee alleging an inadequate-medical-care claim under *Monell* must establish that a municipality's "policy or custom" led to the plaintiff's alleged injury. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1073 (9th Cir. 2016). The plaintiff must also show that the policy or custom was adhered to with "deliberate indifference" to the constitutional rights of detainees. *Id.* at 1076. This standard of objective deliberate indifference requires the plaintiff to show that the facts available to the municipality's policymakers put them on "actual or constructive notice" that their practices were substantially certain to cause a violation of constitutional rights. *Id.*

Sullivan alleges two Multnomah County policies or customs violated his right to

---

[2] The Court also notes the parties are familiar with the facts and each party argues it is entitled to summary judgment as a matter of law. (Docs. 65 at 6, 12; 73 at 41–43.) A summary of the facts may be found in the Court's previous Order on summary judgment. (*See* Doc. 55 at 1–2, 5–10, 18–20.)

- 9 -

adequate medical care: (1) the Multnomah County Sheriff's Office (MCSO) policy that allows deputies to deny detainees prescribed medical devices on a case-by-case basis; and (2) MCHD's custom of rescheduling outside medical appointments that conflict with court hearings or because of staff shortages. The Court will deny Sullivan's motion because the evidence fails to establish, as a matter of law, that Multnomah County had notice that these policies were substantially certain to result in detainees, such as Sullivan, receiving inadequate medical care.

### i.   Denial of Sarmiento Brace

Sullivan contends MCSO's policy that allows deputies to deny detainees prescribed medical devices on a case-by-case basis is unconstitutional. (*See* Doc. 73 at 13, 41.) Indeed, Sullivan asserts that MCSO must allow pretrial detainees to have any necessary medical device, even "potential weapons." (Doc. 73 at 22.) MCSO, which operates MCDC, has a Corrections Division Operational Policy and Procedures Manual. (*See* Doc. 68.) Chapter 12.0.8 of this Manual does, in fact, permit deputies to deny pretrial detainees medical devices that pose "a threat to the safety and security of the facility." (*Id.* at 6.) However, when that occurs, MCHD "will ensure accommodations are made with a compatible device." (*Id.*) According to Sullivan, compatible devices may be inferior to originally prescribed medical devices. (Doc. 79 at 36.) Sullivan thus contends MCSO's policy is unconstitutional and deliberately indifferent to the needs of pretrial detainees because "the law demands equality of devices" and "equal care." (Docs. 73 at 41; 79 at 36.)

The Court disagrees with Sullivan's assertion that the law requires "equality of devices." Under the Fourteenth Amendment, Sullivan is entitled to "adequate medical care" as a pretrial detainee. *See Gordon*, 888 F.3d at 1124; *Alvarez-Machain*, 107 F.3d at 701. The fact that Sullivan and MCHD disagree about which devices would be medically adequate is not enough to establish a deliberate indifference claim. *See, e.g.*, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference."); *Allison v. Prison Health Servs., Inc.*, No. 1:05-CV-510-EJL, 2009 WL 205228, at *8 (D. Idaho Jan. 28, 2009) (Prison providing inmate with

medications, injections, and stretching exercises rather than orthotics was a difference in judgment and not deliberate indifference). Further, MCSO may consider facility safety when approving medical devices for detainees. *See, e.g.*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 660 n.3 (7th Cir. 2021) (prison providing inmate with knee sleeve rather than knee brace based on "restrictive security protocols" was not deliberate indifference).

More importantly, Sullivan fails to show MCSO had actual or constructive notice that its policy of denying detainees medical devices that could present a security risk and allowing MCHD to select compatible replacement devices was substantially certain to result in detainees receiving inadequate medical care. *See Castro*, 833 F.3d at 1076. Sullivan points to no evidence in the record, relating to his medical treatment or the medical treatment of other detainees, that establishes the required notice for a *Monell* claim against a municipality. Further, the risk of allowing a detention facility's medical department to select a compatible device when deputies deem the prescribed medical device unsafe is not so obvious and substantial that a reasonable policymaker must have known about it.

Moreover, even if the Court looks specifically to Sullivan's medical care, Sullivan has not established MCSO had actual or constructive notice that denying him a Sarmiento brace was substantially certain to result in him receiving inadequate medical care. Indeed, there is no evidence in the record establishing that, broadly speaking, patients with a fractured humerus must be treated with a Sarmiento brace and cannot be adequately treated with a sling. On the contrary, Dr. Murphy opines that treating a fractured humerus with a sling is "well within the standard of care." (Doc. 66 at 25.) Even Sullivan's expert, Dr. Segil, does not go so far as to say that a sling cannot adequately treat a fractured humerus. (*See* Doc. 73-1 at 11–12.) Rather, Dr. Segil limits his opinion to Sullivan's injury, confining the discussion in his report to "this fracture." (*See id.*) For these reasons, Sullivan has failed to show the required objective deliberate indifference for his *Monell* claim arising from the denial of the Sarmiento brace.

//

### ii. Rescheduling of Medical Appointments

Sullivan asserts MCHD's custom of rescheduling outside medical appointments when there are conflicting court dates or staffing shortages violated his right to adequate medical care. (Doc. 73 at 13–15.) The crux of this claim rests on MCHD (1) rescheduling a one-week follow-up appointment from July 7, 2017 to July 10, 2017 because of a court-date conflict; (2) rescheduling the July 10, 2017 appointment to July 19, 2017 because of a staffing conflict; and (3) rescheduling the July 19, 2017 appointment to August 3, 2017 because of another court-date conflict. (*See* Docs. 67 at 5–6; 73 at 15.) Sullivan states that MCHD's rescheduling of his appointments resulted in his one-week follow-up appointment becoming a five-week follow-up appointment. (Doc. 73 at 15.) According to Sullivan, if he attended his first follow-up appointment, then "he would have been placed in a brace, splint, or new sling that would have made his recovery less painful." (Doc. 38 at 12–13.)

As discussed above, Sullivan must not only establish that he received inadequate medical care but that Multnomah County had actual or constructive notice its practice was substantially certain to result in detainees receiving inadequate medical care. *See Castro*, 833 F.3d at 1076. Sullivan argues that the risk that pretrial detainees will suffer serious injury if their outside appointments are postponed is obvious. (Doc. 73 at 17.) According to Sullivan, any layperson would "realize that rescheduling outside medical appointments will eventually result in someone suffering somehow someday." (*Id.*) Sullivan therefore contends MCHD must have known that rescheduling outside medical appointments would lead to detainees receiving inadequate medical care. (*See id.*) Yet this custom, on its face, does not obviously result in detainees receiving inadequate medical care. For instance, it may be obvious that a custom of "rescheduling" an emergency treatment or operation would be substantially certain to result in detainees not receiving adequate medical care. The same, however, cannot be said for follow-up appointments, where even outside the correctional setting patients often reschedule their medical appointments for non-medical reasons.

What is more, even considering this custom as applied to Sullivan, the record does not support Sullivan's claim that MCHD had notice that delaying his appointments would result in him receiving inadequate medical care. Although Sullivan missed several appointments, the undisputed evidence shows that MCHD arranged for an on-site x-ray and evaluation by an orthopedic physician's assistant on July 12, 2017—just five days after his original one-week follow-up appointment. (Doc. 67 at 6.) Sullivan contends this evaluation was unhelpful because the physician's assistant recommended he let his arm hang lower, which he could not do. (Doc. 38 at 14.) He argues his sling at the time did not hang low enough and the physician's assistant did not bring any slings with her. (*Id.*) However, the record does not show that MCHD had notice that postponing outside follow-up appointments, and replacing them with the July 12, 2017 on-site appointment, would lead to Sullivan receiving inadequate medical care. As discussed above, there is no evidence showing that Multnomah County had notice that treating a humerus fracture with a sling rather than a Sarmiento brace would almost certainly violate Sullivan's right to adequate medical care. It necessarily follows that MCHD also could not have had notice that delaying appointments—and potentially causing Sullivan's fracture to be treated with a sling rather than a Sarmiento brace—would almost certainly violate Sullivan's right to adequate medical care. Sullivan's claim that MCHD's rescheduling custom prevented him from receiving a lower-hanging sling is even more tenuous. Although Dr. Segil opines that a Sarmiento brace would have benefited Sullivan, Dr. Segil does not suggest that Sullivan needed or would have benefited from a lower-hanging sling. (*See* Doc. 73-1.) Sullivan therefore has not shown the objective deliberate indifference required to establish a *Monell* claim for his rescheduled medical appointments.

Because Sullivan's two *Monell* claims fail as a matter of law, the Court will grant Multnomah County's Partial Motion for Summary Judgment and deny Sullivan's Cross-Motion for Summary Judgment as to the *Monell* claims arising from the Sarmiento brace and rescheduled medical appointments.

//

### B. State-Law Negligence Claim

Sullivan brings a state-law negligence claim against Multnomah County for denying him the Sarmiento brace. Unlike the *Monell* claim arising from the denial of the Sarmiento brace, which requires a higher showing of objective deliberate indifference by Multnomah County policymakers, the negligence claim requires a showing of unreasonableness by Multnomah County employees. *See Est. of Sloan v. Providence Health Sys.-Or.*, 437 P.3d 1097, 1103 (Or. 2019) (applying the common law principle of reasonable care to duties arising from special relationships). There are four elements of a medical-malpractice or medical-negligence claim under Oregon law:

1. a duty that runs from the defendant to the plaintiff;
2. a breach of that duty;
3. harm that is measurable in damages; and
4. a causal link between the breach and the harm.

*Johnson v. Keiper*, 481 P.3d 994, 999 (Or. Ct. App. 2021). According to Multnomah County, Sullivan fails to establish these elements for his medical-negligence claim. The Court concludes Sullivan's negligence claim against Multnomah County hinges on genuine disputes of material facts and cannot be resolved on summary judgment.

### i. Duty and Breach (Foreseeability)

Multnomah County concedes it owed Sullivan a duty to act reasonably, but argues that failing to provide Sullivan with a Sarmiento brace falls outside the scope of its duty because it was not reasonably foreseeable that treating Sullivan with a sling would cause him harm. (Doc. 65 at 12.) In support, Multnomah County points to a provider at Oregon Health & Science University (OHSU)[3] recommending the sling as a substitute for the Sarmiento brace. (*Id.* at 13.) Put differently, Multnomah County contends it could not have reasonably foreseen that complying with the OHSU provider's recommendation would harm Sullivan. (*See id.* at 12–13.)

---

[3] On June 28, 2017, Sullivan received emergency treatment at OHSU after fracturing his humerus during an altercation with deputies at MCDC. (Docs. 38 at 11; 65 at 3.)

Oregon courts "generally analyze a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of reasonable forseeability, rather than the more traditional duty of care." *Stewart v. Kids Inc. of Dallas*, 261 P.3d 1272, 1277 (Or. Ct. App. 2011). The issue of reasonable foreseeability turns on whether "the defendant knew or should have known about the risk of harm to a particular class of plaintiffs." *Chapman v. Mayfield*, 361 P.3d 566, 573 (Or. 2015). Sullivan states "[The OHSU] doctor tried to give me a [S]armiento brace, but the [MCSO] deputies that escorted me there . . . intervened and said that I couldn't have it because it contained metal." (Doc. 38 at 15.) The record includes facts that show the OHSU provider did recommend the sling, as Multnomah County emphasizes, but only after the MCSO deputies stopped Sullivan from receiving the Sarmiento brace. (*See id.* at 15, 85, 219.) Multnomah County knew or should have known that intervening with a patient's medical treatment could impair his healing and increase his pain. *See Chapman*, 361 P.3d at 573. Sullivan's alleged harm is not so "uncommon" or "highly unusual" that this Court should deem it unforeseeable as a matter of law. *See id.* at 572–73.

### ii.   Causation and Damages

Multnomah County contends there is no genuine issue of material fact as to whether denying Sullivan the Sarmiento brace caused his alleged damages. (Doc. 65 at 12.) To support this contention, Multnomah County makes three arguments: (1) decisions made by OHSU providers rather than Multnomah County staff caused Sullivan's alleged damages; (2) a Sarmiento brace could not have lessened Sullivan's pain; and (3) a Sarmiento brace could not have prevented Sullivan's malunited fracture. (*Id.* at 12–14.)

First, as discussed above, there are sufficient facts in the record which undermine Multnomah County's first argument—that OHSU providers decided to treat Sullivan with a sling rather than a Sarmiento brace. Those facts suggest that the OHSU provider only treated Sullivan with the sling because MCSO deputies prevented Sullivan from receiving a Sarmiento brace. (*See* Docs. 38 at 15, 85, 219; 66 at 12.) A reasonable juror could conclude that this decision by MCSO was the cause for Sullivan receiving a sling rather

than a Sarmiento brace.

Second, there are disputed facts which call into question Multnomah County's argument that a Sarmiento brace could not have lessened Sullivan's pain because, when it was recommended on August 3, 2017, Sullivan's injury had been healing for one month and his orthopedist was already weaning him off pain medication. (Doc. 65 at 13.) Sullivan's medical records indicate that the OHSU provider intended to place the Sarmiento brace on Sullivan at his one-week follow-up appointment. (*See* Doc. 38 at 219.) The attempt to place a Sarmiento brace on Sullivan may have occurred as late as August 3, 2017, because Multnomah County rescheduled his follow-up appointment three times. A reasonable juror could find that, if Multnomah County transported Sullivan to his first, second, or third appointment, then Sullivan could have received the Sarmiento brace earlier and benefited from it lessening his pain.

Further, the fact that Sullivan was receiving less pain medication starting on August 3, 2017 does not establish that he was pain free. Sullivan's medical records, for instance, indicate Sullivan complained his pain was worsening a week later on August 11, 2017. (Doc. 38 at 88.) Notably, Dr. Segil also opines that a Sarmiento brace "would have reduced [Sullivan's] pain by keeping a rigid immobilization of [the] fracture." (Doc. 73-1 at 12.) Whether a Sarmiento brace would have reduced Sullivan's pain is a genuine issue of material fact to be determined by a jury.

Third, the Court finds unpersuasive Multnomah County's argument that a Sarmiento brace could not have prevented the malunited fracture because Sullivan's humerus was already healing at a slight angle on August 3, 2017. (Doc. 65 at 13–14.) Like Multnomah County's argument that it was too late to reduce Sullivan's pain, the record contains facts showing that it was Multnomah County, not Sullivan, who rescheduled his follow-up appointment three times. In addition, it seems unlikely that Sullivan's provider at OHSU would have recommended a Sarmiento brace in August 2017 had she thought it would not assist the fracture in healing. More importantly, however, Sullivan need not establish that a Sarmiento brace would have completely prevented a malunited facture. Sullivan may

1  prove his negligence claim by showing Multnomah County caused him to lose the chance
2  at a more properly healed humerus fracture. *See Smith v. Providence Health & Servs.-Or.*,
3  393 P.3d 1106, 1118 (Or. 2017). Supporting this contention is Dr. Segil's opinion that "[a]
4  Sarmiento brace properly fitted would have improved the position . . . of [Sullivan's]
5  fractured humerus." (Doc. 73-1 at 12.) Whether a Sarmiento brace would have improved
6  or prevented Sullivan's malunited fracture remains a genuine issue of material fact for trial.

7  Finally, Multnomah County also appears to contend that Dr. Segil's opinion lacks
8  foundation because Dr. Segil works in Southern California and has no experience in the
9  correctional setting, which is the community standard of care that applies to Sullivan's
10 claim. (*See* Doc. 65 at 14.) Oregon does have a "locality rule" that defines a physician's
11 duty of care within the context of his or her local community:

> A physician licensed to practice medicine or podiatry by the Oregon Medical Board has the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community.

15 Or. Rev. Stat. § 677.095; *see also Mosley v. Owens*, 816 P.2d 1198, 1202 (Or. Ct. App.
16 1991), *rev. den.* 822 P.2d 1196 (Or. 1991). However, Oregon's "locality rule" does not
17 preclude the possibility that certain standards of care are uniform throughout the nation.
18 *Mosley*, 816 P.2d at 1202. Dr. Segil's reported lack of experience in Oregon and the
19 correctional setting does not preclude him from opining on what he considers a standard of
20 care for a community similar to Multnomah County or MCDC.

21 For all of these reasons, the Court concludes that the parties present disputed issues
22 of material facts with respect to Sullivan's negligence claim against Multnomah County.
23 The Court will therefore deny Multnomah County's Partial Motion for Summary Judgment
24 and Sullivan's Cross-Motion for Summary Judgment on the state-law negligence claim.

25 **C.     Remaining Fourteenth Amendment, Assault, and Battery Claims**
26 Sullivan filed a Motion for Summary Judgment on his remaining Fourteenth
27 Amendment excessive-force and state-law assault and battery claims. (Doc. 73 at 25–28.)
28 Relevant to these claims, the parties dispute when Sullivan's arm was broken. (*See* Doc.

1  55 at 7, 9.) Multnomah County suggests that Sullivan's arm was broken during the physical
2  altercation on the fifth floor because deputies heard a popping sound when Sullivan resisted
3  their efforts to handcuff him. (Docs. 42 ¶ 12; 43 ¶ 14; 55 at 7.) Sullivan, however, argues
4  that Defendants Barker and Ingram broke his arm on the fourth floor while he was lying
5  down and compliant. (Docs. 38 at 10; 55 at 9.) Consequently, in a September 17, 2021
6  Order, the Court determined that Sullivan's excessive-force and assault and battery claims
7  turned on disputed facts. (Doc. 55 at 13–14, 27.)

8         In his Motion for Summary Judgment, Sullivan contends his expert, Dr. Hayes,
9  scientifically established that Barker and Ingram broke his arm on the fourth floor. (Doc.
10 73 at 26.) Sullivan also asserts that Multnomah County has failed to provide a qualified
11 biomechanics expert to rebut this opinion. (*Id.*) Therefore, Sullivan reasons, no reasonable
12 juror can rely on Multnomah County's self-serving insinuation that his arm broke on the
13 fifth floor; a reasonable juror must conclude that Barker and Ingram broke Sullivan's arm
14 while he was lying down and compliant on the fourth floor; and there is no genuine dispute
15 of material fact as to whether Barker and Ingram's use of force on the fourth floor was
16 objectively reasonable. (*Id.* at 28–35.)

17        The Court will deny Sullivan's Motion for two reasons. First, the Court has not yet
18 determined whether Dr. Murphy may testify as to the cause of Sullivan's injury. Dr.
19 Murphy's opinion, which posits that Sullivan's arm breaking on the fifth floor is consistent
20 with the MCSO deputies' narratives, may still rebut Dr. Hayes's opinion. Second, even if
21 Dr. Murphy is found unqualified to testify on causation, and Dr. Hayes's opinion is
22 unrebutted, there still remain genuine disputes of material fact for trial. Barker and Ingram
23 assert Sullivan was combative, resistive, and defiant on the fourth floor. (Docs. 42 ¶¶ 14–
24 16; 43 ¶¶ 17–19.) Barker also asserts he was concerned Sullivan would "flail or strike"
25 him, and Ingram was concerned Sullivan "would create a safety risk." (Docs. 42 ¶ 15; 43
26 ¶ 19.) Even if instructed to accept Dr. Hayes's unrebutted opinion as true, a reasonable
27 juror could conclude Sullivan was still combative on the fourth floor and therefore Barker
28 and Ingram's use of force on the fourth floor was reasonable despite it resulting in

Sullivan's fracture. For these reasons, Sullivan is not entitled to summary judgment on his negligence claim even if Dr. Hayes's opinion is unrebutted by Multnomah County.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED:**

1. Sullivan's Motion to Suppress (Doc. 73) is **denied**.

2. Sullivan's *Daubert* Motion (Doc. 73) is **denied in part** as it relates to Dr. Seale's qualifications and testimony and Dr. Murphy's qualifications and testimony regarding Sullivan's medical treatment. A hearing on Sullivan's *Daubert* Motion challenging Dr. Murphy's qualifications and testimony on causation will be held prior to trial.

3. Multnomah County's Partial Motion for Summary Judgment (Doc. 65) is **granted in part** and **denied in part**. Multnomah County is granted summary judgment on Sullivan's two *Monell* claims and denied summary judgment on the state-law negligence claim.

4. Sullivan's Motion for Summary Judgment (Doc. 73) is **denied**.

5. A telephonic Pretrial Hearing is set for **Thursday, March 30, 2023**, **at 3:00 p.m.** Parties will receive a notification with call-in instructions prior to the Pretrial Hearing. The parties shall be prepared to discuss the setting of a trial date and a deadline for filing a Joint Proposed Pretrial Order. The Court's Joint Proposed Pretrial Order form can be found at: https://perma.cc/SK55-JKK4.

Dated this 16th day of March, 2023.

Honorable Jennifer G. Zipps
United States District Judge